TRINITY & B. V. RY. CO. v. McDONALD.
(No. 35–2683.)

(Commission of Appeals of Texas, Section B.
Feb. 19, 1919.)

1. CARRIERS ⟨⟩280(1) — CARRIAGE OF PAS-
SENGERS—DUTY OF CARRIER—NEGLIGENCE.

Railroad companies are not insurers of the
safety of their passengers further than could
be required by the exercise of such a high de-
gree of foresight as to possible dangers and
such a high degree of prudence in guarding
against them as would be used by a very cau-
tious, prudent, and competent person under
similar circumstances, the failure to exercise
such care being actionable negligence.

2. NEGLIGENCE ⟨⟩63—"ACTIONABLE NEGLI-
GENCE."

For negligence to be actionable, the injury
must be observable and preventable, except
when declared by positive law.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Actiona-
ble Negligence.]

3. CARRIERS ⟨⟩302(2)—INJURY TO PASSEN-
GER—USE OF OPEN TOILET.

Railroad's failure to furnish train with toi-
let having bowl or pan at the bottom of stool
did not render it liable for injury to passenger's
eye from small hard substance blown through
opening in stool, such injury not having been
foreseen by railroad as result of the use of open
toilets.

Error to Court of Civil Appeals of Fifth
Supreme Judicial District.

Action by John W. McDonald against the
Trinity & Brazos Valley Railway Company.
Judgment for plaintiff affirmed by Court of
Civil Appeals (160 S. W. 984), and defendant
brings error. Reversed, and judgment ren-
dered for defendant.

N. H. Lassiter and Robt. Harrison, both of
Ft. Worth, and Morrow & Morrow, of Hills-
boro, for plaintiff in error.

Walter Collins, of Hillsboro, and B. Y. Cum-
mings and V. L. Shurtleff, both of Waco, for
defendant in error.

MONTGOMERY, P. J. We take the fol-
lowing statement from the opinion of the
Court of Civil Appeals which is reported in
160 S. W. 984:

"Appellee [McDonald] sued the railway com-
pany to recover damages for personal injuries
received by him while a passenger on appellant's
train. Plaintiff, in substance, alleged that
while traveling as a passenger on appellant's
train operated between Hillsboro and Osceola,
Tex., he had occasion to go into one of the toi-
let rooms situated in said coach and maintained
by appellant; when he raised up the top of said
toilet, the wind rushed up through the opening
of said toilet with great force and a piece of
steel, or particle of [some] character of metal,
struck him in the eye and imbedded itself in
the ball of the eye, which caused the loss of
said eye. Negligence was alleged in having a
toilet with an opening through it, instead of
one with the opening closed in such manner as
to prevent such substances being blown through,
and in failing to equip said toilet room with
modern and approved appliances for closing
said opening, etc. Appellant answered by a
general denial. A trial resulted in a verdict
and judgment for $2,000, from which this ap-
peal is prosecuted."

The Court of Civil Appeals affirmed the
judgment of the trial court.

The Trinity & Brazos Valley Railway Com-
pany applied for a writ of error to review the
judgment of the Court of Civil Appeals,
which was granted (170 S. W. xx).

The petition contains only one assignment
of error, which is:

"The Court of Civil Appeals erroneously de-
clared the substantive law of this case in hold-
ing that the evidence authorized the trial court
to submit to the jury any question of negligence
on the part of the appellant; it being apparent
from the evidence that, as a matter of law,
your petitioner was guilty of no negligence."

The evidence shows that the plaintiff, Mc-
Donald, was injured in the manner and to
the extent alleged by him.

The toilet room of the car in which he was
riding as a passenger was equipped with a
stool with an opening through it, and was
not provided with any means of closing the
opening except by the lid or cover at the top
of the stool. That part of the stool within
the car is called by the witness the "hopper
chute" or "bowl." The top is about 14 inches
in diameter and tapers to 6¾ inches at the
bottom. Below the hopper chute and be-
neath the car is what is called a "bonnet"
extending from the floor of the car down-
ward about 20 inches and being about 9 inch-
es square. This bonnet is directly beneath
the opening in the chute, and so makes a
continuous opening. This bonnet is provided
with two ventilators near the floor of the
car, one at each end, contrived and intended
to create a downward current of air through
the chute and bonnet while the train is in
motion.

The train at the time of plaintiff's injury
was going north and consisted of engine and
four coaches, and the toilet room in which
plaintiff was injured was in the northeast
corner of the rear car. The evidence showed
that at the time of the injury the train was
at a place where there was a sharp curve in
the track.

Various witnesses for the railway company
testified that coaches with toilet arrange-
ments such as are described above were in
use, and had been in use for many years, on
practically all the railroads in the state.
There was also testimony to the effect that
most of the cars built in recent years were

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

provided with toilets having a pan or bowls at the bottom of the stool, and facilities for flushing with water, so that by pushing a lever the pan is emptied and flushed and when the lever is released returns to its position. There was also evidence that some new cars were being constructed with the open toilet. The testimony, however, we think, shows that this more modern equipment was provided for sanitary purposes, and that there was no purpose of preventing accidents or injuries such as is shown in this case. The testimony, however, shows that, if the toilet had been equipped with a pan as described above, the injury would not have occurred.

There was testimony that the wheels of the engine and cars when in motion sometimes grind off small particles of steel from the rails, and that these particles partaking of the motion of the wheels fly off at a tangent, the distance being uncertain, but estimated at from 2 to 8 or 10 feet, the direction being in the opposite direction from that of the train, and that the grinding off of particles is more liable to occur on curves than straight track. There was a volume of evidence by the railway company by men experienced in the business to the effect that owing to the location of the toilet with reference to the wheels and rails, and to the steps and other parts of the car, it was in their opinion extremely improbable, if not impossible, that an accident of the character shown in this case could occur. The evidence of all the witnesses is that none of them ever heard of a similar or any other injury due to the use of an open toilet such as was in the car in which plaintiff was riding.

The particular testimony on which plaintiff relies as being sufficient to show that the railway company did or ought to have anticipated that some injury similar to the one suffered by plaintiff might occur by reason of the equipment was as follows:

E. A. Haver, a witness for defendant, on cross-examination, after having testified as to the construction of the car and the location of the toilet with reference to the steps and other parts of the car testified:

"That step I think would be the protection that would keep the small particles of steel thrown back here from going up that hole, and it helps a great deal. In the cars that I have helped to build the steps were built that way to protect the passengers from steel that might go up there, and I think it enters into it."

Again he said:

"It was not my opinion that the main reason that these steps were built in this manner was to protect this opening from these steel particles, only partly."

This witness, who was a car builder, testified further that in building the cars he did not construct the steps as they were built to prevent particles from entering the car

208 S.W.—58

through the toilet, but that he built them as instructed.

There was evidence by several witnesses that on some occasions they had observed that toilet paper would be carried upward and into the car by air currents, and there was some evidence that under certain conditions there was an upward current of air through the opening of the toilet.

The foregoing, we think, sets out all facts necessary.

## Opinion.

The facts as stated by us show that the plaintiff, McDonald, was injured in the manner alleged by him; that is, by a small particle of steel or other hard substance being carried by an air current through the opening in the stool and striking him in the eye with sufficient force to penetrate the ball.

It is not contended that the doctrine of "res ipsa loquitur" applies to this case. The facts are not such as raise a presumption of negligence.

[1] The only allegation of negligence is that the railway company was negligent in providing the open toilet instead of one equipped with a pan or bowl which would have prevented the injury.

"Railroad companies * * * are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances." Railway Co. v. Halloren, 53 Tex. 53; 37 Am. Rep. 744; I. & G. N. Ry. Co. v. Welch, 86 Tex. 204, 24 S. W. 390, 40 Am. St. Rep. 829.

Any failure to exercise the degree of foresight and prudence mentioned would be actionable negligence. If an injury occur not due to the carrier's negligence, there is no liability.

The test in this case is therefore: Would a very cautious, prudent, competent person, situated as was the railway company in this case, in the exercise of the degree of care required of it, have anticipated that by reason of this open toilet a passenger might receive an injury similar to that received by the plaintiff? In other words, ought it to have anticipated that particles of metal (or other substance might be carried by air currents through the opening in the toilet with sufficient force to inflict an injury similar to that suffered by the plaintiff?

[2] For negligence to be actionable injury must be observable and preventable, except when declared by positive law.

The rule with reference to anticipation of consequences applicable to this case may be thus stated: The defendant is liable for injuries proximately caused by his act or omission when injurious consequences to others could under the circumstances have been

foreseen by a very prudent and cautious person in the defendant's position, at the time, as a reasonable probability. Street on Negligence, p. 75.

The question then is: Is there any evidence which authorizes a finding that the railway company, under the circumstances of this case, ought to have anticipated that, by reason of the manner of construction of the toilet, any person might suffer an injury similar in its nature to that of the plaintiff?

We think the evidence shows only that the railway company ought to have anticipated that passengers or others using the toilet might suffer some discomfort or inconvenience by reason of the construction of the toilet.

The test we have given above is the one ordinarily given to juries in negligence cases of this character; but, in determining whether there is any evidence upon the issue in support of the verdict, we may well take into consideration other tests that have been applied by the courts.

In 20 R. C. L., it is said:

"The common experience of mankind is the criterion for determining what customary measures shall be taken to avoid injury to others. Every one may rightfully rely upon experience, and as a rule he is not charged with negligence in respect to acts which conform to a practice which has existed for years without resulting in any injury. Persons who are charged with a duty in relation to a particular matter or thing have a right to rely upon the sufficiency of a structure or contrivance such as is in common use for the purpose and which has been in fact safely used under such a variety of conditions as to demonstrate its fitness for the purpose. When a structure or appliance such as is in general use has uniformly answered the purposes for which it was designed and used under every condition supposed to be possible in the business, it cannot in reason be said that a person has not acted with ordinary prudence and sagacity in not anticipating an accident which afterwards happens in the use of the thing notwithstanding it continued substantially in the same condition all the time."

In T. & P. Ry. Co. v. Bigham, 90 Tex. 225, 38 S. W. 163, is is said:

"It ought not to be deemed negligent to do or fail to do an act, when it was not anticipated * * * that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecution of the ordinary avocations of life. It would seem there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed."

These principles are universally recognized and have been applied in many cases in this state.

The difficulty is to apply them to a given state of facts, and we recognize fully that their application to one state of facts can rarely be a precedent for any other case, because it is hardly possible for two cases to be identical. Whether a certain result could be anticipated from a given act or omission is usually a question of fact, and becomes a question of law only when but one reasonable conclusion can be drawn from the facts.

[3] We have, in the light of the principles which we have announced, read and re-read the entire statement of facts, and have concluded that there is no evidence in the record which authorized a finding by the jury of negligence on the part of the railway company in furnishing the open toilet and failing to provide a toilet with a bowl or pan at the bottom of the stool.

It is true the accident would not have happened had the latter equipment been provided, but we are pursuaded that it never occurred to any railway company or any railway employés that the improved method of equipment was intended as a safety appliance, or that the use of the open toilet was attended with any danger. All the evidence is that the pan and (provision of) facilities for flushing were for sanitary purposes only.

The open closet such as was provided by the railway company in this case, according to the testimony, has been in practically universal use for many years, and no such accident so far as shown has ever occurred before. The testimony shows that the open toilet is still in use in at least some of the cars of practically all the railroads in this section of the country.

The testimony relied on by the Court of Civil Appeals we do not think should be held sufficient to show ground for anticipation of danger on the part of the railway company.

The evidence of the witness Haver that the steps of the car had a tendency or helped to prevent any particles of steel ground off the rail from entering the car through the open toilet, and his further statement that the steps were built in that way to protect the passengers from such particles, when read in the light of his own and all of the other testimony in the case, we think is insufficient to show negligence.

This witness had already testified that he had never known of any accident as a result of the open toilet. In reply to a question he stated that the steps of the car would be in the way and prevent particles of steel thrown off from the wheels in front from entering the opening in the toilet, and in this connection he testified to the relative location of the wheels, steps, and toilet. He further testified that in his judgment a particle of steel from the rails could not be so thrown as to come into the car through the toilet. He further testified:

"That step I think would be the protection that would keep the small particles of steel thrown back here from going up that hole and it helps a great deal."

He further said:

"I only give my personal opinion, and my personal opinion is that is a part of the reason for putting the step there."

The testimony of Haver relied on by the Court of Civil Appeals should, we think, in the light of the entire record, be treated as no more than the opinion of Haver. In the absence of some evidence tending to show that some such accident as occurred in this case had occurred, or that the circumstances were such as to have induced an apprehension that such might occur, we think that ground for anticipation of danger has not been shown. We have reached the conclusion announced after much hesitation, because it is contrary to the opinion of the trial court and of the Court of Civil Appeals upon a question of which they are as competent to judge as we, and for whose opinion we have the highest regard; but we have been unable to agree with them that the evidence in this case shows liability.

We think the judgment of the Court of Civil Appeals and of the district court should be reversed, and judgment here rendered for defendant.

PHILLIPS, C. J. The judgment as recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.