**HINES, Director General of Railroads, v. MORROW. (No. 8552.) ***

(Court of Civil Appeals of Texas. Dallas. Nov. 26, 1921. Rehearing Denied Jan. 14, 1922.)

**I. Railroads ⚖️303(I)—Laborer, removing automobile bogged in mud at crossing, held a "traveler" using highway.**

An automobile truck owner's employé, injured by stepping into a hole and becoming entangled in a rope used in the work of removing a traveler's automobile bogged in the mud on a highway across a railroad right of way, was a "traveler" lawfully "using" the highway within Rev. St. 1911, art. 6494, requiring the railroad company to keep the crossing in proper condition for use of the traveling public, and the company owed to him the duty owed the public generally.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Traveler on Highway.]

**2. Negligence ⚖️59 — Anticipation of exact consequences unnecessary.**

One need not actually anticipate the consequences of his negligence nor foresee the particular injury to be liable for such consequences and injury, it being sufficient, if the injury is of such a character that it might reasonably have been anticipated and if injured party is so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.

**3. Railroads ⚖️337(2) — Defective crossing held proximate cause of injuries to laborer removing automobile bogged in mud.**

Where an automobile truck owner's workman, assisting in fastening a rope used in the work of removing a traveler's car, bogged in the mud on a highway not kept in proper condition for travel, as required by Rev. St. 1911, art. 6494, was injured by stepping into a hidden mudhole with his artificial foot and becoming entangled in the rope, which caught and mangled his other foot when he tried to extricate himself from the hole by grabbing the rear end of the moving truck, the railroad's negligence in maintaining the hole was the proximate cause of the injury, though the exact happening could not have been foreseen.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by B. Morrow against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Affirmed.

Chas. C. Huff and A. H. McKnight, both of Dallas, McMahan, Jones & Jones, of Greenville, and Wallace Hughston, of McKinney, for appellant.

B. Q. Evans, of Greenville, and Chas. L. Black, of Austin, for appellee.

VAUGHAN, J. Appellee, as plaintiff in the trial court, instituted his suit against appellant to recover damages in the sum of $30,000 on account of certain personal injuries alleged to have been sustained by him on the 18th day, of January, 1919, as the result of certain acts of negligence on the part of appellant. The trial resulted in verdict and judgment in favor of appellee for $9,500, the case now being before us on appeal from such judgment.

For an exposition of the case as to injuries and damages claimed to have been sustained by appellee, we deem it only necessary to quote from the petition, as follows:

"Plaintiff shows that on the 18th day of January, 1919, he received and sustained a serious injury that necessitated the amputation of his only leg, which also caused him such a nervous shock that, together with the injury, has seriously impaired his health and very greatly destroyed his strength, all of which was caused by the negligence of the defendant, under the following conditions and circumstances:

"The railway of the Missouri, Kansas & Texas Railway Company of Texas extends due west from Greenville, in Hunt county, Tex., by way of Farmersville to McKinney, in Collin county, Tex., and that within the city limits of Farmersville and near the western edge of said town the public dirt road and highway known as the Farmersville and McKinney road is crossed by said railroad on a trestle and bridge, making what is ordinarily termed 'an overhead crossing'; * * * that the county of Collin and the town of Farmersville for many months prior to the date of the injury had constructed and maintained a pike road in good condition, extending up to the edge of the right of way on both sides of the railroad at the point of approach to this crossing, leaving a space the width of the right of way to be maintained and kept up by the defendant; that the Missouri, Kansas & Texas Railway Company of Texas and C. E. Schaff, receiver of the railroad and property of said railway company, and the defendant herein, for a long time prior to the date when plaintiff was injured, recognized said crossing as one of the crossings that it was the duty of said parties to construct and maintain as the law requires at any other public crossing; * * * that on the day and for many months immediately preceding the date when plaintiff was injured the defendant had failed and neglected to keep said crossing under said trestle and bridge and the approaches. thereto in repair, but had negligently and care-

lessly permitted the crossing and approaches thereto and under said road, and especially at the point where plaintiff was injured, to become full of holes and excavations, so as to render that part of the crossing and approaches almost impassable by vehicles or otherwise; that on said date the owner of a car, while attempting to use this crossing, had his car to become bogged down in the mud, when it became necessary to pull by extra power said car out of said bog and mud, and it became necessary to have the assistance of another car for that purpose; that the plaintiff while in the service as an employé of —— Ball, together with another servant, went to this crossing in a car for the purpose of assisting the other person to pull his car out of the mud; * * * that the car so bogged down was standing immediately under the railroad trestle, and on that part of the dirt road crossing commonly used by the public; that the car that was carried down to this crossing by the plaintiff was driven up within a distance of 8 or 10 feet, and stopped on the approach to and on the road under the crossing, and stopped on the part of the crossing kept up and recognized as the approach to the highway and road crossing by the defendant aforesaid, and the plaintiff alighted from his car and assisted in fastening the rope to each of said cars for the purpose aforesaid; that when the front car was ready to start and make the pull, the plaintiff started to step from between said cars, and in so doing the leg that had prior to that time been amputated, which was extended with a wooden leg, went down into a hole at least 10 inches or 12 inches, filled with soft mud and water, and plaintiff's limb became securely fastened therein, and he was unable by his own efforts to extricate his said foot and limb from said hole; that the front car was then moving, and in order to avoid the danger of being run over by the rear car, which danger was then imminent and certain, if he was unable to extricate his limb from said hole and said danger would have caused to him death or serious bodily injury, and, prompted thereby, he grabbed the rear end of the car or truck that was pulling the car out of the mud, and thereby his foot and leg were pulled from the hole and in doing so a coil in the rope between said cars caught the plaintiff's other foot and limb, and so mangled and lacerated the same that it became necessary to amputate his only foot and leg below the knee; * * * that it was the duty of the defendant to have constructed a safe and suitable crossing under its road at the place where the defendant's road crossed over said dirt road, as also the approaches thereto, and to have maintained and kept said road and the approaches on the right of way to the crossing in such repair and condition as not to unnecessarily impair its usefulness; * * * that the defendant had failed and neglected to keep said crossing and the approaches thereto on this right of way, and which is being used by the public, in a proper condition for the use of the traveling public, but had negligently and carelessly permitted a hole to form and to remain on said crossing and approach thereto 10 inches or 12 inches in depth, and permitted the same to remain concealed, rendering the place dangerous and hazardous to the traveling public, all of which was well known to the defendant, or could have been known by the exercise of ordinary care, but the same was not known to the plaintiff, and was not observable by common observation, and that by one or all of the acts of negligence of the defendant, as above set forth, the plaintiff was directly caused to suffer the injuries as herein complained of."

Appellant's first assignment of error is addressed to the action of the court in overruling general demurrer interposed to appellee's petition. The proposition based upon said assignment being, as follows:

"Where a plaintiff, a nonemployé, is injured in the daytime while undertaking to pull an automobile out of the mud in a public highway across a railroad right of way, as the result of stepping into a hole and becoming entangled in a rope with which he is doing the work, he not being a traveler on the highway, but one employed by a traveler to remove the automobile, his injury is not the proximate result of the negligence, if any, of the operator of the railroad in failing to maintain the crossing in proper condition."

[1] From a careful examination of the many authorities cited, we have reached the conclusion that appellee was a traveler within the meaning of that term at the time he received the injuries as alleged in his petition. The right to use a public highway is vested generally in the public without limitation further than it be used in a lawful manner for all purposes incident to or connected with the privilege to travel the highways. Of course we do not mean to be understood as holding that the right to "use" carries with it an exemption from the operation of any law prohibiting the use of highways for certain purposes, for the use of a highway must always be within the limitations prescribed by law. The appellee was clearly within his rights as a traveler in the use of same at the time he received his injuries, viz. engaged as a laborer in the work of removing an automobile bogged in the mud on said highway at the place where he was injured. The term "using" is one of broad import as applied to the rights of travelers on the public highway, and any restriction which would unjustly deprive the public of the benefits of all legitimate uses of a highway, not sanctioned by some plain statutory provision, would be an unwarranted invasion of the right of the public to use the highway for the purposes for which same was intended to be used and enjoyed. Therefore whatever duty under the law appellant owed the public generally to keep said crossing in a reasonably safe condition for travelers using same was owed to the appellee at the time he received the injuries as alleged in his petition. It was the duty of appellant to keep the crossing in question in proper condition for the traveling public, and his failure to do so was the cause of appellee being there at the time of his injuries.

Article 6494, Revised Statutes of 1911, is as follows:

"It shall be the duty of every railroad company in this state to place and keep that portion of its roadbed and right of way over or across which any public county road may run, in proper condition for the use of the traveling public."

This court, in the case of St. Louis Southwestern Railway Co. v. Smith, 49 Tex. Civ. App. 1, 107 S. W. 638, the opinion being by the late lamented Judge Talbot, said:

"Where a railroad is constructed across a public road or highway, already established, the duty of the railroad company under the statute to keep the crossing in repair is absolute, * * * and, as it was made the duty of appellant by statute to keep it in repair, the failure to do so would be negligence per se."

In International & Great Northern Ry. v. Butcher, 81 S. W. 819, the court said:

"The failure of a railroad company, after having exercised the right thus given by statute, to perform the statutory duty imposed, is negligence per se, * * * and if one is lawfully using such crossing, and in the exercise of ordinary care in its use is injured, and the injury is proximately caused by such negligence, the railroad company is responsible to the injured party for the consequences of its negligence."

The following authorities are cited as supporting the conclusion reached that appellee was a traveler within the meaning of that term at the time he received the injuries as alleged by him: Ruling Case Law, title, Highway, §§ 303–306; 20 L. R. A. (N. S.) annotation, pp. 748–750; Kessler v. Benger, 205 Pa. 289, 54 Atl. 887, 61 L. R. A. 611; Hill v. Glenwood, 124 Iowa, 479, 100 N. W. 522, from which we quote as follows:

"The streets are for the use of the general public without discrimination; for the weak, the lame, the halt and the blind, as well as for those possessing perfect health, strength, and vision. The law casts upon one no greater burden of care than upon the other."

M., K. & T. Ry. Co. v. Saunders, 101 Tex. 255, 106 S. W. 321, 14 L. R. A. (N. S.) 998, 16 Ann. Cas. 1107, cited by appellant, we think is authority in support of our conclusion, as the following quotations will demonstrate:

"The deduction seems plain that the protection is given to those who are exercising their right with respect to the road or street. * . * * The existence of the crossing fixes the relation to the railway of the road or street and of those exercising the right to use it, and the provision is a definite protection to them; but, if we attempt to apply it to others, to persons or property whose position is not influenced by the existence of the crossing or any right they have to use it, we have no definite guide. * * * The rights of those using the road or street crossing the railway should not be narrowly restricted, as is sometimes attempted. * * * The statute in question imposes a duty the nonobservance of which con-, stitutes negligence with respect to those for whose benefit the duty is imposed, viz. users of the road or street."

Which clearly indicates that it was not the purpose of the able judge rendering the opinion for the court in said case to limit the right to the use of the public highway, or to restrict the use of same to the narrow limits as here contended by appellant.

[2] The allegations of the petition in reference to the acts of negligence upon which liability for the injuries sustained by appellee are predicated are sufficient to show that the negligence alleged was the direct and proximate cause of the injuries claimed to have been sustained by appellee. This, we think, is shown by the legal effect of the allegations of the petition, supra, and not necessary to be here restated or enlarged upon, and leads our minds to the conclusion that the injury is the natural and probable consequence of the acts of negligence alleged, "that is, such an injury as might reasonably have been anticipated under ordinary circumstances as a natural and probable result of that act"; in other words, is a compliance with the doctrine "that foreseeableness or anticipation of injury is a necessary element to proximate cause," as analyzed and explained in the case of San Antonio & A. .P. Ry. Co. v. Behne (Com. App.) 231 S. W. 354, from which we quote as follows:

"One sui juris is legally charged with the duty of anticipating all consequences of his conduct which under ordinary circumstances flow therefrom as a natural and probable result. To meet the requirements of this rule, actual anticipation is not the test; nor is it material whether the particular injury might have been foreseen, but it is requisite that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him, or to one similarly situated, might reasonably have been foreseen."

As said in the case of Railway v. McDonald (Com. App.) 208 S. W. 912:

"The difficulty is to apply them [the rules under discussion] to a given state of facts, and we recognize fully that their application to one state of facts can rarely be a precedent for any other case, because it is hardly possible for two cases to be identical. Whether a certain result could be anticipated from a given act or omission is usually a question of fact, and becomes a question of law only when but one reasonable conclusion can be drawn from the facts."

We have been materially aided in disposing of this question by the following authorities: City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31

Am. St. Rep. 17; City of Dallas v. Jones, 93 Tex. 38, 49 S. W. 577, 53 S. W. 377 (on rehearing); Railway Co. v. Gillenwater, 146 S. W. 589; 13 Ruling Case Law, Highways, § 372; Finnegan v. Sioux City, 112 Iowa, 232, 83 N. W. 907; Page v. Bucksport, 64 Me. 51, 18 Am. Rep. 239. We therefore conclude that the trial court did not err in refusing to sustain appellant's general demurrer and overrule his first assignment of error.

[3] Appellant's second assignment of error is based upon the trial court's refusal to give to the jury appellant's special charge No. 1 and peremptory instruction for the appellant, and is here presented under the following propositions:

First. "The duty resting upon the operator of a railroad to maintain an undergrade crossing of a public highway in reasonably safe condition for the use of the traveling public does not extend to one employed by a traveler on the highway to assist in pulling his automobile, which has bogged down, out of the mud; and an injury to the person so employed, caused by his stepping into a hole in the right of way and becoming entangled in a rope with which he is working, does not result from actionable negligence on the part of the operator of the railroad." Second. "The testimony shows as a matter of law that the negligence, if any, on defendant's part with respect to the condition of the highway was not the proximate cause of plaintiff's injury."

Liability is predicated upon the failure of appellant to keep the crossing in question in proper condition for the traveling public, as required by article 6494, Revised Statutes of 1911. The controlling question, therefore, of a necessity is "whether appellant's negligence in failing to maintain the crossing in proper condition proximately caused appellee's injury." The following statement of the facts will present a clear and full understanding of that issue, as well as the other issues to be noticed further on: The railway company had undertaken to keep that part of the public highway across its right of way in condition where appellee received his injuries. The condition of the road was bad at the time; the mudhole was in plain view, and the road had been in bad condition since November, 1918. On the morning of the 18th of January, 1919, appellee was directed by his employers to go and help pull out a car that was stuck in the mud at the overhead crossing in question. Harvey Benson, Dayton Womble,——Evans, and ——Templeton accompanied appellee; they went down in a Ford truck. There was a service car stuck in the mud just under the bridge, the front end was south of the bridge, headed toward McKinney.

We think it advisable to here quote a part of appellee's testimony as contained in the statement of facts:

"We pulled through under the trestle, there was room under the trestle to pass, and we passed under the trestle and pulled a little south of the car that was stuck. We pulled to the front of the car that was stuck, and I suppose that we went something like 8 or 6 feet in front of it; I don't know just exactly. Womble was the man that was driving the car that was stuck in the mud. We pulled around, and when we got in front of Womble's car he taken one end of the rope and tied into the front spring of his car, and I doubled up some slack and kneeled down on it with my knee, and tied it to the rear end of the truck, and as I got up Benson asked me if I had tied, and I told him yes, and he got in the truck, and I started to step out of the way, and my foot slipped in a hole. The foot that slipped in the hole was my right foot, the artificial foot. Well, I started to fall, and by that time the truck was moving, and I grabbed the back end of the truck, and it pulled up, and in some way the rope wrapped around my leg and crushed it and broke it off. I don't know just how far my foot went down into the hole; but, judging from the way it looked on my pant's leg, I would say something like 12 inches. When my foot went down into this hole the reason that I did not pick it up and step out was because I could not pull it out. When I got my foot in the mud I seen the shape I was in if he pulled the car it would have pulled it over me, because I couldn't get my foot out myself, and I grabbed the back end of the truck, thinking they would pull the car over on top of me. I grabbed the back end of this truck, and that by that means it pulled my foot out and the rope caught the other one and tore it off. I was not acquainted with that road there under the trestle and the approach to it at that time; I had not been there before that day, and had not crossed over it at any time before that day. While I had been living in Farmersville, in June, that was my first trip to that place. In driving our car past this one on down in front of it our car did not bog down; there was Bermuda grass along the edge, and we run a couple of wheels on this Bermuda grass, and by that means we got around in front of the car. The appearance of the road where we were doing that work was that it appeared to be smooth with water and slush, soft mud, and it looked to be smooth. I never discovered any other holes there. The first time that I knew there was a hole there 12 inches deep was when I stepped into it; I never noticed it until after I got fastened in it. * * * I went to do that as a part of the labor that I was doing for Mr. Allison. * * * It was Mr. Womble that tied the rope to the car that was bogged down, and I was the one that tied the other end of it to the end of the truck; I tied it to the axle of the truck. There was a little slack in the rope, and I taken up on the rope and I put my knee on it to keep it from getting down in the mud when I tied it to the axle. * * * After I had got up Harvey Benson asked me if I had tied the rope. That was after I had raised up and was standing up right behind the truck. * * * When he got up in the truck he started it, and I started to step out of the way, out to the side toward the bridge, toward the trestle, and when I did my foot slipped and went into the mudhole; my right foot went into the hole, and I started to fall, and

I grabbed the back end of the truck, and then as the rope tightened it caught my left foot. I could not say whether that was part of the coil I had wadded up and put under my knee that caught my foot or not. I don't know just how many coils there were, but I guess there was more than one, but I would not say whether there were three or four; I don't know how many. * * * I did not know that cars had been bogged there at the trestle prior to the time of the accident. Anybody when they got there could see that it was muddy and could see the mudhole, and could see that the car looked to be down to the axle. The mudhole between where the bogged car and the truck was standing was all smooth, watery and sloppy. * * * There was nothing around the back end of this truck when I tied this rope that would indicate that there would be any holes in the ground. * * * The rear end of the bogged car was almost under the bridge, and right in the mudhole."

### J. T. Ball testified:

"The condition at this crossing was mighty bad at that time. The bogged car in question was right in the mudhole, almost under the bridge where the bridge goes over the public road. The way that hole came to be formed there was the tiling had choked up, and the water came right down over the road and caused the mudhole there. I have seen the section foreman and his hands working there as I passed in the last five years, filling up the holes in that tiling that had broken in it. Holes had broke in the tiling and wagons, and cars would go into it if they hadn't filled them up, and they filled them up, and that stopped the water, and it scattered over the road and run down to the bridge, and that is what caused that mudhole. That mudhole had been there for some time. I could not say exactly how long, but I judge 30 days. I helped to get some cars out of there myself, and I stuck one of them. Besides that, I had seen other people's cars pulled out of there when I happened to be there at the time."

The above statement of facts is practically without contradiction, and presents all of the facts material to the disposition of the assignments under consideration. Was the negligence of appellant the proximate cause of the injuries sustained by appellee? To answer this in the affirmative, the facts should, in the light of common experience as applied to the ordinary affairs of men, reasonably demonstrate that the injuries sustained by appellee on account of such negligence should have been anticipated in view of all the surrounding circumstances. This requires a careful analysis of the evidence in the light of the well-recognized rules of law applicable to same.

We appreciate the difficulty of applying the law to cases of this character, and recognize the full force of the observation made in the case of Railway v. McDonald (Com. App.) 208 S. W. 912:

"The difficulty is to apply them [the rules under discussion] to a given state of facts, and we recognize fully that their application to one state of facts can rarely be a precedent for any other case, because it is hardly possible for two cases to be identical."

Also in the Behne Case, supra:

"The chief difficulty arises, not in determining what the rule is, but in applying it to each particular case when it arises—a difficulty frequently adverted to by the courts."

In cases of the character under consideration, we think the observation made by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257, peculiarly applicable, viz.:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."

Thus recognizing the difficulty of the task, we will undertake to apply the rules to the state of facts involved in this case. We know of no better way to present our views than to borrow from the able comprehensive and exhaustive argument in brief filed in this cause in behalf of appellee, viz.:

"Did appellee's stepping into the hole in question proximately cause his injuries? That is the question presented. Appellant's negligence was responsible for the existence of the hole. About this there is no dispute. Appellee stepped into the hole. About this there is no dispute. He was injured. This also is undisputed. Did his stepping into the hole proximately cause his injuries? That, and that only, is the question involved. Now, one thing is certain at the outset: That, if the hole had not been there, and the appellee had consequently not stepped into it, the injury would not have occurred. This very fact, therefore, demonstrates that the hole as a defect in the highway was at least a concurring cause of the happening, and, under the law, it will be regarded the sole cause, unless the rope and the truck are considered as intervening agencies coming into the transaction in such a way as to break the chain of causation.' As a common-sense proposition, what set into motion the train of acts causing the appellee's injuries? Was it not the hole which caused him to fall? If so, is not the hole to be considered the cause of the happening, and the rope and the truck 'mere conditions'? We think so, and believe the authorities support us without question. If we are wrong about this, then we think it must be held that the hole and the rope and the truck were co-operative, concurrent factors, in which event, of course, appellant is liable. But we recognize the fact that, in considering the question of proximate cause, we are in a palace of mirrors, and that it takes clear thinking and careful analysis to make one's way through the maze of conflicting decisions. * * * The case, stated in the briefest form, is simply this: Appellee was on the highway, using it in a lawful manner, and slip-

ped into this hole, treated by appellant's negligence, and was injured in undertaking to extricate himself. The thing that appellant's negligence was responsible for—the hole, the defect in the highway—was thus present and operative as a cause of appellee's injury. Suppose appellee had been walking down this road, and, coming to this place, he slipped into the hole and broke his leg in undertaking to extricate himself. It would be a clear case of liability. What is the legal distinction between that case and this? There is none. It makes no difference why appellee went to the crossing in question, provided he went there rightfully. Everything that happened up to the time of his arrival is of no legal importance, except as a mere condition as explaining the rightful reason for his presence. Appellee went to this crossing on business, in the lawful use of the highway. He slipped into this hole and was injured. It must be held in mind that the negligence of the appellant is not its failure to provide a road in proper condition for the person whose car was bogged. We do not have to trace the case back through the bogging down of the car and predicate liability on the negligence of the appellant in failing to furnish a road in proper condition to the person who was driving that car. That is not the case at all. The fact that the car bogged down has no proper place in the case, except merely as a part of the res gestæ, so to speak, and as explaining appellee's presence at the point. Whether the car bogged down as a result of appellant's negligence, or otherwise, is quite immaterial, for, however this may be, appellee had the right to go down on the public highway to the point in question and assist in extricating the car, and in doing this was using the highway in a lawful manner for the general purpose of travel, and liability is predicated upon the fact that appellant's negligence was responsible for the hole in the highway into which appellee slipped. * * * There was no wrong in this case, except the negligence of the appellant in leaving a hidden and dangerous hole in the highway, in violation of its duty to keep the same in reasonable repair. Appellee was using the highway lawfully. He slipped into the hole. Under the circumstances existing at the time, it was essential for him to immediately extricate himself to save himself from peril. He did what, under the circumstances, seemed best and most prudent to do in an effort to save himself from this peril. This action on his part, grabbing hold of the truck, and the fact that his foot became entangled in the tightening rope, did not break the chain of causation between the negligence of appellant in maintaining the hole and his injury. What caused him to grab the truck? The fact that his leg was hung in the hole, and it was necessary to extricate himself immediately."

Such application of the law to the facts we think warranted and supported by the following authorities: Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; City of Dallas v. Jones, 93 Tex. 38, 49 S. W. 577, 53 S. W. 377 (rehearing); Railway v. Gill-

enwater, 146 S. W. 589, from which we quote as follows:

"It may have been that, if the mule had not been traveling so rapidly, appellee might have passed over the crossing without injury, but we think it clear, if the crossing had been in proper repair, no injury would have resulted to him. So it cannot be said that the running away of the mule was the sole cause of the accident. We think it can be said, however, had the crossing not been in bad repair, the accident would not have occurred. Therefore the bad repair of the crossing was at least a concurring cause of the accident, liability for which appellant is responsible, unless appellee was guilty of contributory negligence."

Writ of error was denied in that case.

There is a well-recognized difference between the test of negligence in a case where there is an intervening agency and the test of proximate cause.

"In the case at bar there is negligence to begin with, to wit, the failure to keep the highway in repair for travelers. Appellant's contention, in effect, is that there can be no liability because there is no breach of duty owed appellee. The breach of duty was the negligence in leaving the road out of repair, and the only question left is one of proximate cause."

We think that question is fairly determined by the following cases: Gonzales v. Galveston, supra; Railway Co. v. McDonald, supra; Railway Co. v. Behne, supra. But appellant contends:

"It could not reasonably have been foreseen that slipping into this hole would have caused the appellee to have become entangled in a rope, and the moving truck, with such dire results. The answer is plain: The exact consequences do not have to be foreseen. The test is (for the moment conceding that the negligence has not been proved): Could probable injury have been reasonably contemplated to travelers in the highway by reason of this hole? As the courts say, it is always the unexpected that occurs. Human happenings vary infinitely in their detail. Two things rarely, if ever, happen in exactly the same way. It is not essential, therefore, that defendant foresee the exact happening. The only requisite, even where there is an active independent intervening agent, is to foresee the probability of its intervention or some such agency arising and harm resulting therefrom."

From the above we are led to overrule appellant's second assignment of error, and first and second propositions based thereon.

We have carefully considered the following authorities cited in appellant's brief: Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Neely v. F. W. & R. G. Ry. Co., 96 Tex. 274, 72 S. W. 159; T. & B. V. Ry. Co. v. Blackshear, 106 Tex. 515, 172 S. W. 544, L. R. A. 1915D, 278; Beaty v. Missouri, Kansas & Texas Ry. Co. of Texas et al., 175 S. W. 450; G., C. & S.

F. Ry. Co. v. Clement, 220 S. W. 407—and find no occasion to question the correctness of the rules of law announced in said cases, respectively, as applied to the particular state of facts then under investigation as made by each of said cases. However, we do find a material difference existing between the state of facts in the instant case and the state of facts contained in the report of the cases above referred to. This, of course, creates a vital difference in principle. However, we do not think it necessary · to lengthen this opinion by undertaking to delineate the. difference between the facts in the instant case and the facts in the authorities above referred to, believing that same will be apparent on proper comparison and analysis. What we have heretofore said in reference to appellee being a traveler at the time and place when injured disposes of appellant's third and fourth assignments of error contrary to appellant's contention, and we, therefore, hold that the trial court did not err .in giving to the jury the fifth paragraph of the general charge, viz.:

"It was the duty of the defendant to use ordinary care to keep and maintain the dirt road crossing under this crossing and track at the place in question in a reasonably safe condition for the traveling public, and a failure to do so would be negligence."

The above discussion and the conclusion reached therefrom necessarily results in overruling appellant's fifth, sixth, and seventh assignments of error, and the proposition based thereon.

Finding no material error in the proceedings had in the trial court as complained of by appellant, it is therefore ordered that the judgment of the court below be, and the same is hereby, in all things affirmed.

Affirmed.

### On Appellant's Motion for Rehearing.

Our attention is called to the record, which shows that prior to the trial of this cause in the court below John Barton Payne succeeded Walker D. Hines as Director General of Railroads, and was named Federal Agent by the President under section 206 of the Transportation Act 1920, and the judgment was rendered against John Barton Payne, and not against Walker D. Hines, as stated in our opinion affirming the judgment of the trial court, and said opinion is reformed in that respect so as to show that the judgment is affirmed in favor of appellee, B. Morrow, against John Barton Payne, appellant. However, the original style of said case will be retained on the docket of this court, and the style of said suit as stated in appellant's motion will be changed, as requested, to Walker D. Hines, Appellant, v. B. Morrow, Appellee.

It is further made to appear by said motion that since the trial of this cause in the court below and appeal to this court, James C. Davis has succeeded John Barton Payne as Director General of Railroads and Federal Agent, and, as per the request of said motion, it is ordered that the said James C. Davis be, and he is hereby, substituted as appellant, and that in the further proceedings herein he, and not John Barton Payne or the said Walker D. Hines, be named as appellant.

We have carefully considered motion anent granting rehearing, and, not finding any valid reason why we should not adhere to our views as expressed in opinion, said motion is overruled.

---

⬙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 22, 1922.