## CARLISLE et al. v. WEST TEXAS FAIR ASS'N. (No. 515.) *

Court of Civil Appeals of Texas. Eastland.
Dec. 14, 1928.

Rehearing Denied Jan. 11, 1929.

*Writ of error refused.

Kirby, King & Overshiner, of Abilene, and A. J. Smith, of Anson, for appellants.

J. M. Wagstaff and Dallas Scarborough, both of Abilene, for appellee.

FUNDERBURK, J. The suit is one brought by appellants for damages for the death of Tom Carlisle, who was killed on the property of the West Texas Fair Association at one of the fairs sponsored by it. While automobile races, a part of the program of the fair, were in progress, an axle of one of the racing cars broke as the car was making the turn at one end of the race track, and a wheel flew off and struck the said Carlisle, resulting in his death. After the wheel came off, it rolled some distance, until it struck a "hub-rail" about 18 inches or 2 feet high, inclosing the race track, whereupon it bounded something like 40 or 50 feet into the air, and, clearing a wire fence, estimated by different witnesses to be all the way from 25 to 125 feet from the guard rail, descended upon the said Carlisle, who was at the time viewing the races from the running board of an automobile. The place of injury was at a point variously estimated by the witnesses to be from about 130 to 185 feet from the "hub-rail" and about 170 to 267 feet from the place where the wheel came off.

Plaintiff's petition alleged about nine different grounds of negligence. Only the grounds of negligence designated as subdivisions (a), (d), and (h) need be noticed. They were as follows:

(a) It (defendant) did not use ordinary care to have a reasonably safe race track prepared;

(d) It (defendant) did not use ordinary care to erect and maintain sufficient barriers around the race track to protect its patrons from danger; and

(h) "The defendant did not use ordinary care to warn and negligently failed to warn its patrons, visitors and spectators of such races, of the imminent danger known to them, the said defendant, or which could have been known, by the exercise of ordinary care, and which was unknown to such patrons, visitors and spectators, incurred by them in taking a position near the northeast curve in the track, and in close proximity to the same, and where this deceased was directed and permitted to go to view the performances and where he was standing at the time he received the fatal injuries herein referred to, the defendant knowing of such danger and knowing of the presence of the deceased at such time and place, or it could have known such fact, by the exercise of ordinary care."

The defendant, in addition to a general denial, among other special defenses, pleaded that the deceased came to his death as a result of unavoidable accident. The court submitted to the jury eight special issues, including issues as to the existence of negligence, embodying grounds in subdivisions (a) and (d) above mentioned.

In connection with the submission of an issue as to unavoidable accident, the court directed the jury that, in the event they answered that the death of Carlisle was the result of an unavoidable accident, then they need not answer any of the other special issues submitted. The jury, responding to this instruction and having so answered said issue, made no finding upon any of the other issues submitted. Judgment was accordingly rendered for the defendant, from which the plaintiffs have duly perfected appeal.

■ Appellants by their first to fifth propositions, inclusive, complain of the introduction of certain evidence upon the trial of the case. By the first proposition it is contended that there was error in permitting the witness W. W. Watson to testify that the defendant had to get a license from the American Automobile Association in order to run the races, and it did get such license. The objections made to the introduction of this testimony, in addition to the claim that it was irrelevant and immaterial, was that the rules and regulations of such association would not defeat a recovery by the plaintiffs; that the deceased was not charged with notice of such rules and regulations; and that the testimony was hearsay. The testimony was a part of that by which the defendant sought to show that the race track in question was constructed, maintained, and operated as other race tracks generally. While there was no such other evidence concerning the nature of this organization, as to render the testimony objected to of much probative value, such fact would not militate against its relevancy or materiality so as to render its introduction erroneous. Even if it was subject to the objections urged, we cannot see that it could have any prejudicial effect.

■ By the second, third, fourth, and fifth propositions complaint is made of testimony mainly on the ground that same consisted of conclusions or opinions of the witness. The second proposition complains of the court permitting the witness W. W. Watson to testify that it was not proper to build barriers any higher than the barrier in controversy, and as to the effect of building higher barriers in case of collision with same by automobiles. The third complains of the testimony of the same witness to the effect that, in all of the race tracks he had seen in Texas, the barriers were no higher than the barrier in controversy, and that same was a standard barrier. By the fourth proposition, complaint is made of the testimony of the witness D. H. Jeffries, to the effect that an inspector, from looking at the axle which broke, could not determine that it would break, and could not have told it by any other test. By the fifth proposition

like complaint is made of the same witness testifying that in all first-class race tracks the space used between the outside rail and the ground between the fence was 30 feet on the straightaway and 40 feet on the turns.

We have concluded that these propositions must be overruled. Both of the witnesses were shown to be experts in the matter of constructing and maintaining race tracks, and the testimony of Jeffries relative to the breaking of the axle really amounted to no more than a statement as to the appearance of the axle. The testimony was not the statement of a conclusion or opinion, but of a fact.

■■ By their sixth proposition appellants complain of the refusal of the court to submit their special issue No. 1 as follows: "Was it the duty of the defendant in the exercise of ordinary care to warn the deceased of the danger, if any, incident to his viewing the races at the time and from the place when (where?) he was subsequently killed?"

It will be seen that this issue was predicated upon the ground of negligence embodied in subdivision (h) of plaintiff's pleadings set out above. Manifestly the issue calls for a finding consisting of different elements. To answer it the jury would have to determine, among other things, whether a warning was given. It may be conceded that the evidence raised an issue of fact as to whether warning was given. But a finding on this point only would not enable the jury to answer the question. The jury would have had to further determine whether the defendant either knew or was chargeable with knowledge of the existence of danger. If the defendant did not know there was danger and did not have knowledge of any facts to create a duty on its part to know of the danger, then no duty to warn the deceased could have existed, even in the absence of any dispute whatever that the defendant gave no warning. Let us say, then, that the evidence shows that defendant gave deceased no warning. What evidence is there that defendant knew that there was a danger to the deceased? What evidence is there that the defendant had knowledge of any facts that gave rise to a duty on its part to know that deceased was exposed to danger? There was no evidence of any defect in the construction, or fault in the manner of maintenance of the race track, that would tend to break an axle on a racing car. There was no evidence to show that it may be expected that axles will break and hurtle a wheel over the ordinary barriers. There was no evidence of any defect in the car, known to the defendant or that by the exercise of proper care could have been known. There is no evidence of one single fact, so far as we can see, that tended to impose a duty on the part of defendant to foresee a danger to the deceased and to warn him of its existence. There was therefore, in our opinion, no error in the action of the trial court in refusing to submit the requested issue. Our conclusions, we think, are supported by the law as declared in Trinity & B. V. Ry. Co. v. Blackshear, 106 Tex. 515, 172 S. W. 544, L. R. A. 1915D, 278, and Trinity & B. V. Ry. Co. v. McDonald (Tex. Com. App.) 208 S. W. 912.

■ This opinion is not to be construed as implying an approval of the charge of the court given in connection with the issue submitting unavoidable accident, whereby the jury was instructed that, if they answered said issue in the affirmative, they need not answer any other of the issues submitted. This instruction amounted to a withdrawal, upon the contingency mentioned, of the other issues, and had the effect of denying to appellants their right to have their theory of the case affirmatively submitted for the finding of the jury. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517. Assuming that there was evidence justifying the submission of either or both the two issues on negligence, a question not presented for our determination, then we think it was error to give the charge in question. Appellee, while contending that the court erred in refusing to give a peremptory instruction in its favor, presents no counter assignment authorizing us to pass on that question. Appellants present no assignment complaining of the instruction in question. Hence that matter is not before us. We only mention it here because what we have considered a proper statement of the case makes mention of this action of the court in such way that, if unexplained, might be construed as implying our approval.

Finding no error, the judgment of the trial court is affirmed.