### ERWIN et al. v. DUNN et al.
#### No. 11857.

Court of Civil Appeals of Texas. Galveston.
March 27, 1947.

Rehearing Denied April 24, 1947.

Bracewell & Tunks, of Houston, for appellants.

Alpha & Brunson and Gordon A. Dotson, both of Houston, for appellees.

CODY, Justice.

This was an action for damages sustained by a ten year old boy, Charles Erwin, when, a piece of fireworks, allegedly sold him by an employee of defendants, exploded in his right hand. It was brought by his mother acting in her individual capacity, and as the boy's next friend; she was joined by her husband, the boy's step-father. The defendants conducted a retail mercantile business at Houston under the name of Berry Hardware, Cabinet and Mills Works.

At the conclusion of plaintiffs' evidence, in response to defendants' motion, the court instructed a verdict for defendants.

It was the theory of plaintiffs' action that the fireworks, being an explosive, was inherently dangerous, and that defendants knew or were charged with knowledge of such dangerous character. Also, that from the proof of the sale and delivery thereof to Charles, and from the proof that he was ten years old, the jury could infer that defendants were guilty of negligence, and that such negligence was the proximate cause of the injuries Charles sustained. It was further the theory of plaintiffs' action that, since the piece of fireworks was labeled by the manufacturer "Two Shot Repeater", the defendants by selling same warranted that it would shoot twice, and twice only. The manufacturer is not a party to the action.

The plaintiffs' evidence was substantially as follows:

That on December 1, 1945, defendants conducted a retail business in Houston. That on said date their employee sold a "Two Shot Repeater" to Charles for 15 cents. That Charles heard the saleslady explain how it worked. That according to such explanation the "Two Shot Repeater" was to be placed upright on its base, then its fuse ignited. That thereupon an explosion would occur upon the ground, followed by another explosion in the air.

That at the time of the sale Charles' brother, who was two years his senior, remained outside while Charles went into the store. After the purchase, on their way home, the brothers decided to shoot the "Two Shot Repeater". The place selected was on the sidewalk some distance from their home, but where apparently, from the remains lying about, other similar pieces of fireworks had been fired. They set the "Two Shot Repeater" upon its base, so that it stood in an upright position. They then ignited its fuse, and ran away from its proximity, as they understood the danger of being near when an explosion occurred. The "Two Shot Repeater" performed according to expectations. That is, there was an explosion on the ground, followed by an explosion in the air. Charles was not injured at that time.

Upon cross-examination of Charles it was developed that the "Two Shot Repeater" operated on the principle of the firecracker, and was, in essence, two firecrackers joined together tandem or lengthwise. The base, which was wooden, formed the bottom end of the bottom firecracker, when the "Two Shot Repeater" was placed upright for firing. Near the base, but on the side of the bottom firecracker, was the fuse. The top end of the bottom firecracker was formed by an inverted firecracker being inserted. The fuse of the top or inverted firecracker reached down into the explosive agent contained in the bottom firecracker. So, when an explosion occurred in the bottom firecracker, the fuse of the top firecracker became ignited, and the top firecracker was projected into the air, and there exploded. The part of the firecracker which contained the explosive agent was made of pasteboard, except of course the bottom end of the bottom firecracker, which was the wooden base.

Plaintiffs' evidence was that after the "Two Shot Repeater" was exploded that the bottom part remained intact. Unobserved by his brother, Charles picked up this hull or bottom part, and placed it in his pocket, where it remained unknown to any one else until the next day. On the next day Charles and his little sister were left at home while his mother and brother had gone next door. While playing, Charles pulled the hull out of his pocket, and held it in his right hand when his sister handed

him a match which he struck with his left hand, and inserted into the upper end of the hull. A terrific explosion occurred which jarred the windows in the house next door, and mutilated Charles' right hand. But the hull of the bottom firecracker continued to remain intact. This Charles again picked up and put in his pocket where it was discovered by his mother at the hospital. After the hull was discovered, Charles in response to questioning told his mother the facts to which he testified at the trial.

Plaintiffs predicate their appeal upon these points:

1. "The trial court erred in instructing a verdict for defendants, in effect holding that the evidence did not raise an issue for the jury as to whether or not the sale of the fireworks to minor plaintiff was negligence."

2. "The trial court erred in instructing a verdict for defendants, in effect holding that negligence (if admitted) on the part of defendants in selling a firework to minor plaintiff was not a proximate cause of the injuries."

3. "The trial court erred in instructing a verdict for defendants in effect holding that under the undisputed evidence there was no fact issue as to whether or not defendants impliedly warranted that the firework would shoot twice, and twice only."

### Opinion

■ Ordinarily, when the court sustains a demurrer to the sufficiency of plaintiff's evidence to make out a prima facie case, the correctness of such action must be tested by assuming that plaintiff's direct evidence is true, and that every inference which is favorable to plaintiff and which can legitimately be drawn from such direct evidence is valid. Defendants here urge, in effect, that we must take judicial knowledge that gunpowder would not behave as plaintiffs' evidence related that the explosive agent acted; and that it is contrary to common experience that a boy whose hand had just been mutilated would have picked up the hull, etc., etc.

■ The answer to defendants' contention is a short one. We cannot find where the plaintiffs gave any evidence as to what the explosive agent used in the "Two Shot Repeater" was. We are not prepared to take judicial knowledge that all fireworks which are made for the purpose of making a noise use, for their explosive agent, gunpowder. And since the explosive agent in question is not known, judicial knowledge of its behavior and what it will not do will not be taken. Of course every one knows that gunpowder is dangerous, but aside from that it would be the better practice to establish by expert testimony how an explosive agent will act or not act under specified conditions. Furthermore, people under the shock of injury sometimes do strange things. However strange the evidence here, we will take it as true for testing the correctness of the court's action in holding that a prima facie case was not made out.

It is plaintiffs' position that they made out a case from which the jury might have legitimately inferred that defendants were negligent in selling and delivering the firecrackers to a ten year old boy, and that the jury might have legitimately inferred that such negligence was the proximate cause of the injuries.

■ There is no contention that the sale of the "Two Shot Repeater" to a minor was prohibited by law. But, of course, defendants were under the common-law duty not to sell an article capable of injuring the buyer if the buyer did not know, or could not reasonably be assumed to know, of the dangerous character of the article. Whether a ten year old boy could be assumed to appreciate the danger inherent in the firecracker is ordinarily a fact question. "It has been held by numerous decisions that a child under the age of seven years is presumed not to have discretion such as will enable it to avoid danger * * *, and that as to children between the ages of seven and fourteen years, it is a question of fact as to whether they possess such discretion, * * *." Johns v. Ft. Worth P. & L. Co., Tex.Civ.App., 30 S.W.2d 549, 557 (writ refused).

■ Whether Charles had the discretion to appreciate the dangerous character of the firecrackers, when they were sold to him, would be decisive of whether defend-

ants violated their common-law duty when they made the sale to him. That is to say, whether they were negligent depended upon whether Charles could reasonably be assumed to have the discretion to appreciate the danger inhering in the firecrackers. It is fundamental that "Negligence is a fact to be determined by the jury from the evidence in the absence of law defining the facts which constitute it, unless it can be said that no reasonable mind could, from the evidence, reach any other conclusion than that the acts claimed to be negligent were such that no ordinarily prudent person would commit under the circumstances surrounding him at the time. Anderson v. Reich, Tex.Com.App., 260 S.W. 162, 163.

Here the negligence, i. e., breach of duty, relied on by plaintiffs was the sale of fireworks to a boy who should reasonably have been assumed to have lacked discretion to appreciate the danger inherent in explosives. Had Charles been injured when he and his brother exploded the firecrackers on December 1, clearly a jury question would have been presented as to whether the sale and delivery to him thereof was negligence and the proximate cause of his injuries. But the event showed that he and his brother did have sufficient discretion, when they exploded the firecrackers on December 1, to appreciate and avoid the dangers from such explosions. No amount of maturity of mind, it seems to us, would have enabled Charles, after having seen the bottom firecracker explode on December 1, to have anticipated that, by inserting a lighted match into the open end of it, it could be exploded. The problem which has troubled us in passing on this case is whether or not the proof here did at most merely make out a case from which, perhaps with the aid of the doctrine of res ipsa loquitur (if it applied), negligence in the manufacture of the bottom firecracker could be inferred, which negligence was the proximate cause of the injuries.

■ But we have concluded that the point of the difficulty lies in accepting as credible the evidence that, after the bottom firecracker exploded, a portion of the explosive agent remained, unexploded, and capable of being exploded in the manner testified to—as well as the failure of so powerful an explosive agent to destroy the hull of the bottom firecracker by its second blast, i. e., the blast which occurred when Charles inserted a lighted match, etc. However, by moving for an instructed verdict, defendants conceded the truth of all evidence upon which a judgment could be based. There was no evidence what the explosive agent consisted of. And even had the testimony established that the explosive agent was gunpowder, we would hesitate to pass on the predictability of the behavior of gunpowder. There are different formulas for making gunpowder. And the parties have not discussed judicial notice. We must hold in the present state of the record that plaintiffs' evidence was not of such a nature that no judgment for plaintiffs could be based thereon because of its incredibility as being contrary to known natural laws.

■ As pointed out above, proof of the sale of the firecrackers to Charles, and his age, was proof from which the jury could have legitimately inferred negligence. "When a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured, whose injury is the natural and probable consequence of the misconduct; and that liability extends to such injuries as might reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of the wrongful act." Seale v. R. Co., 65 Tex. 274, 276, 57 Am. Rep. 602. It could have been reasonably anticipated that Charles would have been injured by the explosions of the firecrackers, as the natural and probable result of having same delivered to him.

We do not mean to intimate, as stated above, that defendants could have anticipated the extraordinary manner of the occurring of the explosion which injured Charles. But, as also stated above, defendants might reasonably have anticipated that a ten year old boy would have been injured by reason of the dangerous character of the firecrackers. "Whether a given act may be deemed the proximate cause of an injury, is simply whether, in the light of all the attending circumstances the injury was

such as ought reasonably to have been anticipated." Galveston H. & S. A. R. Co. v. Bell, 110 Tex. 104, 106, 216 S.W. 390. The manner of the occurrence of the injury need not have been foreseeable. "One sui juris is legally charged with the duty of anticipating all consequences of his conduct which under ordinary circumstances flow therefrom as a natural and probable result. To meet the requirements of this rule, actual anticipation is not the test; nor is it material whether the particular injury might have been foreseen. But it is a requisite that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." 2 San Antonio & A. P. R. v. Behne, Tex.Com.App., 231 S.W. 354, 356; Hines v. Morrow, Tex.Civ.App., 236 S.W. 183 at page 185, (writ refused). "Whether a certain result could be anticipated from a given act or omission is usually a question of fact, and becomes a question of law only when but one reasonable conclusion can be drawn from the facts." Trinity & B. V. Ry. Co. v. McDonald, Tex. Com.App., 208 S.W. 912, 914. As a matter of law, defendants could not reasonably have anticipated (1) that the explosive agent of the bottom firecracker would not completely explode, (2) that the hull of the bottom firecracker would continue to possess a dangerous character after the original explosions, (3) it would hardly have been utterly unforeseen that Charles would pick up the hull of the bottom firecracker, and later insert a lighted match into the open end, (4) it would certainly not have been foreseeable that an explosion would thereby be so brought about. But from the act of placing the firecracker in Charles' possession, and from his age, it might reasonably have been inferred that he might injure himself in handling same. We therefore sustain plaintiffs' points 1 and 2.

We overrule plaintiffs' point 3. The vendors of explosives or firecrackers are not insurers against injury resulting therefrom to purchasers. Fireworks are cheaply constructed, and any adult knows that their behavior is apt to be unpredictable. Minority is not here urged as a factor.

The judgment is reversed and the cause remanded.

Reversed and remanded.