We approve the holding of the Commission of Appeals on the question discussed in its opinion.

---

## SAN ANTONIO & A. P. RY. CO. v. BEHNE et ux. (No. 163–3159.)

(Commission of Appeals of Texas, Section B. June 1, 1921.)

**1. Negligence ⊜⇒56(3)—Law of proximate cause applicable to violations of statutory and common-law duty.**

It is not the rule that violation of a statutory duty imposes liability for any injury traceable to the wrongful act, regardless of whether it might have been foreseen or anticipated; but the rule is that where the act or omission is wrongful or negligent, whether as a result of failure to observe a statutory or common-law duty, liability, in either case, is limited to proximately caused injuries, and the rules for determining proximate cause are the same in either case.

**2. Negligence ⊜⇒59—Foreseeableness of injury as "natural and probable result" element of proximate cause.**

Foreseeableness or anticipation of injury is a necessary element of proximate cause; and while actual anticipation is not the test, nor is it material whether the particular injury might have been foreseen, it is requisite that the injury be of such a general character as might reasonably have been anticipated and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen; the phrase "natural and probable result" meaning what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances.

**3. Railroads ⊜⇒113(10)—Insufficient drainage held not proximate cause of drowning in flood.**

Failure of a railroad to have sufficient opening for flood water in bridging a creek as required in Rev. St. art. 6495, whereby in a not unprecedented flood its bridge was washed away, *held* not the proximate cause of the death of one who was drowned when thrown from a tree downstream in which he had taken refuge from the flood, when the tree was struck by the bridge washed against it by the flood waters.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by Albert Behne and wife against the San Antonio & Aransas Pass Railway Company. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (198 S. W. 680), and defendant brings error. Judgments of the district court and Court of Civil Appeals reversed and rendered.

Henderson, Kidd & Henderson, of Cameron (Boyle, Ezell, Houston & Grover, of San Antonio, of counsel), for plaintiff in error.

U. S. Hearrell and R. B. Pool, both of Cameron, for defendants in error.

McCLENDON, P. J. This action was brought by Albert Behne and wife as plaintiffs, against the San Antonio & Aransas Pass Railway Company, as defendant, to recover for the death of their son Ed Behne, who was drowned by being thrown from a tree in which he had taken refuge from the flood waters of Elm creek; the tree having been struck and felled by a bridge of defendant company, which had been washed by the flood waters against the tree.

The cause was tried before a jury upon special issues, and upon the answers by the jury of all issues favorably to plaintiffs, judgment was rendered for the latter. This judgment was affirmed by the Court of Civil Appeals. 198 S. W. 680.

Liability is predicated upon the failure of the railway company in constructing its roadbed and tracks to provide the necessary drainage in accordance with the natural lay of the land, as required by statute (R. S. art. 6495).

The controlling question is whether the failure of the railroad company in this particular was the proximate cause of the death of plaintiff's son. The Court of Civil Appeals, in an elaborate opinion, has given a very full and accurate statement of the pleadings and evidence. In the conclusion we have reached, which is that the complained of wrongful acts of defendant were not, in contemplation of the law, the proximate cause of the drowning of the plaintiffs' son; the following statement of the facts, which are in the main undisputed, will suffice to a clear understanding of that issue:

Elm creek at the point of intersection with defendant's railway flows in an easterly direction—the railway at that place running approximately north and south. The valley of Elm creek is about 4,000 feet in width. Across this valley the railway beginning at the south was constructed upon a solid earth dump some 6 or 7 feet high, extending from the high-water mark on the south to a distance of about 2,132 feet. On the north side of the valley was a similar dump or embankment, extending about 846 feet. Between these dumps was the bridge proper across the channel of the creek, 154 feet in length, and trestle work connecting with the bridge and to the north of it, extending some 83? feet to south end of the north dump, leaving an open space, represented by the length of the bridge and trestle work, of approximately 982 feet, or about one-fourth of the of the valley. The bridge proper was feet higher than the dump. Just below

to the east of the railway was an open tract of sparsely wooded land, containing some six or seven acres through which the creek meandered, and through this tract extended a public road, the regular thoroughfare from Cameron to Ben Arnold. The railway had been constructed for quite a number of years, during which time there had been a number of floods as high as that in question, the waters of which had run over the dumps on either side of the bridge, and on several occasions these dumps had been washed away; but the bridge and track had always remained intact.

On the occasion in question, Ed Behne, with two of his brothers and an uncle, had driven from their home some miles distant to the open tract of land below the railway, unhitched their team in the creek bottom, and were fishing. They expected to camp there that night. About 7 o'clock in the evening a heavy rain came up and the creek began to rise rapidly. In a few minutes they began preparation to leave by hitching up their team, but before they could get out of the creek bottom, the water had risen so rapidly that they were compelled to take refuge in the trees. They had been in the trees some 30 minutes when the railroad bridge and a part of the track was washed away and struck the trees in which they had taken refuge. Two of the Behne boys and their uncle were drowned. The third Behne boy, Manuel, succeeded in reaching another tree, from which he was rescued the following day. The evidence, though conflicting, was sufficient, we think, to warrant the jury finding that the flood was not unprecedented, either in height or in the rapidity with which the water rose. It was clear, however, from the evidence that in the rapidity with which the water rose and the force with which it struck the railway embankment, trestle, and bridge, it was, at all events, quite unusual. There was a great deal of testimony upon this point, but it is not necessary to notice it in detail. The evidence showed that the open tract upon which the Behne boys and their uncle were fishing was frequently used by campers and camping parties, and was often resorted to during the fishing season by fishermen, and that the public road running through it was frequently used. It was also in evidence that Elm creek was subject to sudden rises and that during seasons of flood neither human beings nor animals made use of the flooded area of the open tract of land, or of the roadway.

[1] The holding of the Court of Civil Appeals is to the effect that the statute, noncompliance with which is the basis of the suit, was enacted for the protection of persons, as well as property, and that its violation constituted a wrongful act as a matter of law and imposed liability for any injury which could be traced to such unlawful act, regardless of whether the injury were one of a kind or nature which might have been foreseen or anticipated. As we construe the opinion of the Court of Civil Appeals, a distinction is drawn between an act which is wrongful or negligent per se, as in violation of statute, and one which results from a failure to exercise ordinary care, in so far as the doctrine of anticipation of injury, as applied to proximate cause, is concerned.

The conclusion thus reached is not in accord with the holdings of our Supreme Court. We do not find that any distinction is drawn as regards the rule that liability for a wrongful act is limited to such injuries as are proximately caused by such wrongful act, whether the act be wrongful per se, as for the failure to comply with a statutory duty, or wrongful at common law, as being a failure to exercise ordinary care. The difference between the two classes of wrongful acts rests solely in the method of determining whether they be wrongful. When it is shown that a statute has been violated, wrongfulness or negligence follows per se, as a matter of law; whereas, if the dereliction complained of depends for its wrongful character upon the principles of the common law, it is usually a question of fact whether there has been a failure to exercise ordinary care.

When it has been once determined that the act or omission complained of is wrongful or negligent, whether as a result of failure to observe a statutory or common-law duty, liability, in either case, is limited to proximately caused injuries. And the rules for determining proximate cause are the same in either case. Railway v. Barry, 98 Tex. 250, 83 S. W. 5; Burnett v. Fort Worth Co., 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504; Railway v. Wilkes (Tex. Civ. App.) 159 S. W. 126; Railway v. Dobbins (Tex. Civ. App.) 40 S. W. 861; Waterman Lumber Co. v. Beatty, 110 Tex. 227, 218 S. W. 363.

Quoting from the Burnett Case, above:

"It is almost universally held that the violation of a statutory duty is negligence per se. But, as we understand it, this is the difference between negligence at common law, usually a question of fact, and the violation of a statutory duty—'only this and nothing more.' When a plaintiff sues for the neglect of the provisions of a statute, or of the ordinance of a city, and proves such violation and that he has been injured as the approximate cause thereof, he has established the first postulate of his case, that is the negligence of the defendant."

The exact point is decided in the Waterman Lbr. Co. Case, above, in the following language by Associate Justice Greenwood:

"There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish not only a violation of the statute but that the violation was the proximate cause of the injury. Though the violation of the statute would be negligence per se,

the action would fail without a showing of proper causal connection between the negligence and the injury. Shearman & Redfield, Law of Negligence (Street's Ed.) § 27; Railway v. Bigham, 90 Tex. 225, 38 S. W. 162; Railway v. Campbell, 241 U. S. 510, 60 L. Ed. 1125; Stirling v. Bettis Mfg. Co., 159 S. W. 916; Elk Cotton Mills v. Grant, 140 Ga. 727, 48 L. R. A. (N. S.) 656, 79 S. E. 836. It follows that there was the same necessity for a proper application of the thoroughly settled law of proximate cause in this case as in the ordinary negligence case involving no violation of a statute."

[2] The doctrine that foreseeableness or anticipation of injury is a necessary element to proximate cause is now so well established in this state that it is hardly necessary to do more than state the rule. The leading cases which announce this doctrine are Seale v. Ry., 65 Tex. 274, 57 Am. Rep. 602; and Ry. v. Bigham, 90 Tex. 223, 38 S. W. 162. In the Seale Case the rule is stated in this language:

"When a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured, whose injury is the natural and probable consequence of the misconduct; and that the liability extends to such injuries as might reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of the wrongful act."

This rule is clear and definite, and should, we think, produce little, if any, confusion, provided the language used be given its reasonable interpretation. Some controversy has arisen in other jurisdictions and among text-writers upon the question whether anticipation of injury should be limited in application to determining the question of negligence vel non; one view being that in determining whether the act complained of is negligent—that is actionably so—anticipation of probable consequences is controlling; but that whenever it is determined that the wrongdoer should reasonably have anticipated that the act might be injurious to some one, negligence is established and liability extends to every injury which naturally flows therefrom, regardless of whether reasonable foresight might anticipate it. It may well be that difference between these two views is more apparent than real, and that the conflict arises more from a confusion of terms or the infirmities of language than from a substantial divergence of views. It is clear to our mind that in the definition of "proximate cause" above quoted, the two portions of the definition are used synonymously as expressing the same thought. To say that an injury is the "natural and probable consequence" of a given act is but saying in other words that it is such an injury as might "reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of that act." One sui juris is legally charged with the duty of antici-

pating all consequences of his conduct which under ordinary circumstances flow therefrom as the natural and probable result. To meet the requirements of this rule, actual anticipation is not the test; nor is it material whether the particular injury might have been foreseen. But it is requisite that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.

The basis for this rule is in the Bigham Case given to be that one ought not to be held responsible for those consequences of his acts which, in the light of common experience, and having a due regard for the rights of others, he could not be expected reasonably to have anticipated. "It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed."

The chief difficulty arises, not in determining what the rule is, but in applying it to each particular case when it arises—a difficulty frequently adverted to by the courts.

"The difficulty is to apply them [the rules under discussion] to a given state of facts, and we recognize fully that their application to one state of facts can rarely be a precedent for any other case, because it is hardly possible for two cases to be identical. Whether a certain result could be anticipated from a given act or omission is usually a question of fact, and becomes a question of law only when but one reasonable conclusion can be drawn from the facts." Ry. v. McDonald, 208 S. W. 912.

It would, for the reason last announced, not be profitable to review the many cases in which the doctrine of anticipation of injury has been applied in this state. From them, however, it will be seen that our Supreme Court has uniformly applied what might be termed a practical, common sense test, the test of common experience. The expression "natural and probable result" has been used and interpreted to mean what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances. "Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws." Bigham Case, above.

In the Seale Case, liability was denied for injuries to a person who was burned in trying to extinguish a fire caused by negligence of the defendant. It was said:

"That one exercising due care, and incurring no risks, in extinguishing a fire, should have the flames communicated to her clothes, and thereby lose her life, is something so improb-

able that the anticipation of it should not be charged to any one under such circumstances. Such a thing might happen, but it would be only from some casualty which could not possibly be foreseen; and, in such cases, as we have seen, the original negligence cannot be regarded as the proximate cause of the injury."

In the Bigham Case, the negligence of a railway company in having a defective fastening upon a gate to its stock pens was held not to be the proximate cause of injuries to the owner of cattle in the pen who was injured by being run over by the cattle in their frightened escape through the gate, while he was in the act of securing the gate with a rope. Liability for injury to the cattle thus escaping was, however, held to exist.

In the recently decided case of Ry. v. Bennett, 110 Tex. 270, 219 S. W. 198, the following clear and concise application of the rule is given by Chief Justice Phillips:

"Under the authority of Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602, and Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, the negligence of the defendant's employés in the origin of the fire cannot be justly regarded as the proximate cause of the injury to Bennett. The test of this question is, ought the defendant and its agents to have reasonably foreseen that as the consequence of the negligence which caused the explosion in the tank car, the injury to Bennett, or like injury to some other employé in his situation, would probably result? In the language of Judge Gaines' opinion in the Bigham Case, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in Bennett's becoming overheated. No one standing at the stage of the entire happening which had to do with the gas explosion in the tank car could have regarded it as other than a bare possibility, at best, that at a later period of a fire thus produced in an open inclosure, an employé of the company, in attempting to extinguish it, would get so close to the fire or stay in such a situation so long as to be injured by the heat of the fire."

[3] We think a proper application of the principles above announced leads to the conclusion that the failure of defendant company to provide proper drainage as required by the statute was not the proximate cause of the death of plaintiff's son. Conceding that the flood was not so unprecedented, either in height or suddenness, as to be without the purview of the statute, and that defendant should reasonably have anticipated its happening, and that it might result in washing away the bridge; nevertheless, the chain of circumstances which brought about plaintiff's position of peril was so unusual and improbable as to be wholly without the sphere of events which defendant ought reasonably to be held to have anticipated. That the events of this chain were possibilities is, of course, conceded. This is demonstrated by the fact that they did happen, and as a

result of the operation of natural laws. But the extreme improbability of the resultant death of plaintiff's son rests in the fact that it could only happen at a time of heavy flood, unusual in its suddenness and under such circumstances that no one could be presumed to be, except by the barest stretch of the imagination, in the path of the destroying agency—the washed away bridge. The causal connection between the negligence which put in motion that agency, and the injury, is not controlled by the fact that the agency acted directly upon the injured party. That causal connection was broken in contemplation of law by the intervention of disconnected and independent agencies, brought into being by a chain of circumstances so improbable as to render them in law unforeseeable. The breaking away of the bridge was indeed a cause, and an immediate cause, of the injury. Without it, the injury would in all probability not have happened. But the relation between the wrongful act complained of and the ultimately resultant injury is so remote as to require resort, not to probabilities, but to fantastic speculation in bare possibilities, if not indeed to "prophetic ken"; which the law does not require.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and judgment rendered in favor of defendant company.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.