## CHRONISTER LUMBER CO. v. WILLIAMS.
### No. 1159.

Court of Civil Appeals of Texas. Beaumont.
March 7, 1927.

Rehearing Denied March 16, 1927.

Morris, Sewell & Morris, of Houston, for appellant.

S. M. Adams, of Nacogdoches, for appellee.

WALKER, J.

The nature of this suit is fully stated in our certificate to the Supreme Court, which is as follows:

"This suit was instituted by appellee, Mrs. Bob Williams, against appellant, Chronister Lumber Company, a corporation, for herself and minor children to recover exemplary damages against appellant for the death of her husband, she alleging that appellant owned and operated a sawmill in Cherokee County, Texas, which it logged by means of a tramroad extending from its mill into Nacogdoches County and back again into Cherokee County; that her husband was in the employ of appellant on or about the 25th day of April, 1922; that he lived at Douglas on appellant's tramroad, and was transported daily by appellant on a valuable consideration from his home near Douglas in Nacogdoches County to appellant's 'front,' a distance of ten or twelve miles, where he did his daily work, and at the close of the day was transported back to his home; that he was killed by appellant's gross negligence on the day mentioned. She further alleged that appellant was a subscriber under our Workmen's Compensation Act, and that she had been awarded and was collecting compensation under its provisions.

"The only issue of negligence submitted to the jury was as follows: 'Was the defendant, Chronister Lumber Company, guilty of gross negligence in the manner in which the train was made up and operated at the time and under the circumstances?' This issue was answered in appellee's favor and her damages fixed at $6,000. The record reflects the following facts:

"1. In 1922 and for many years prior to that date, appellant owned and operated a sawmill at Wildhurst, in Cherokee County, Texas, which it logged by means of a tramroad extending from its mill in Cherokee County into Nacogdoches County by way of Douglas, and from there a distance of ten or twelve miles back into Cherokee County.

"That it had been maintaining a camp near Douglas for some years prior to April 25, 1922, but on that date was establishing a new camp at the terminus of its road, and was at that time, under an agreement, transporting its employees who lived at Douglas to and from their work. This was done daily on a valuable consideration. Bob Williams was one of appellant's regular employees, who lived at Douglas, and was transported to and from his work daily under the said agreement.

"2. Appellant operated a log train over its tramroad from its mill to its timber at the terminus of the road. This train usually consisted of an engine and tender, one loader, a train of log cars, and caboose. The proper way to make up this train was to put the engine, tender and loader at the front end, followed by the log cars, and to put the caboose at the extreme end of the train. This was the customary and safe place to put the caboose, and operatives of the train recognized that it was dangerous to those riding in the caboose to put it at any other place in the train. Appellant had been maintaining a camp at Douglas for some years prior to April 25, 1922, but at that time was establishing a new camp at the terminus of its railroad, and in the meantime was daily transporting its employees who lived at Douglas from their homes to and from their work. This was on a valuable consideration both to appellant and to the employees.

"3. One S. W. Littlejohn was appellant's manager, and as to the extent of his relations and the relations of one Harris Anderson, Mr. Littlejohn testified:

"'My name is S. W. Littlejohn; I am manager of Chronister Lumber Company and was manager for them in April, 1922. * * * My duties were to look after the running of

the mill generally and I had authority to make a contract with anyone on anything. I remember hearing of the accident in which Bob Williams lost his life. At the time of the occurrence I was in Tyler, Smith County. I don't remember exactly what time I reached home with reference to the time of the accident, but it was a day or two after that. I don't know whether I called anyone in Nacogdoches County as soon as I heard of the accident. * * *

" 'It was a pretty good while after the wreck before I was out where it occurred. Harris Anderson was our woods foreman and he went out daily with the train. He had authority to make up the train and what he said about their makeup went. * *. *

" 'Mr. Anderson was superintendent of the woods operation of the Company. He had a right to give instructions to the train men as to how they should make up the train and it was the trainmen's duty to comply with his orders. If someone was to be discharged and I wasn't there Mr. Anderson could do it. * * *

" 'I didn't have anything to do with Mr. Williams being on that train. He was one of the employees of our company. I don't know how many employees there were on that train that day. From 30 to 40 men generally worked out at the front. Some of them would go out on the caboose and some that lived in the community did not. Those who lived at Camp No. 1 would be at the time 12 or 15 miles from the new camp. * * *

" 'The woods foreman was Mr. Harris Anderson. I employed him. The Board of Directors of the corporation did not have anything to do with me employing him, but I did it myself. * * * Mr. Anderson was superintendent of the woods operation of the company. He had a right to give instructions to the train men as to how they should make up the train and it was the trainmen's duty to comply with his orders. If someone was to be discharged and I wasn't there Mr. Anderson could do it.'

"4. On the 25th day of April, 1922, the log train was made up by Anderson by putting the engine,· tender and logs first, in the order named, then the caboose, followed by about fourteen log cars loaded with green logs. As the train was crossing a creek on its trip back to the mill on the evening of that day, the track gave way, wrecking the caboose and several of the log cars; and killing Bob Williams.

"5. The evidence is sufficient to raise the issue and support a jury finding that Harris Anderson was guilty of gross negligence in the manner in which he made up and operated the log train, and that his negligence was the proximate cause of Bob Williams' death.

"The following questions are involved in this appeal, and determine its result, though many other questions are raised by appellant's assignments, which we must determine, but as to which this court is in accord. However, we are not in agreement upon the answers to these questions, and, therefore, we hereby certify them to you for your consideration, and most respectfully pray that you answer them for us:

"Question One: Can the gross negligence of the woods foreman, Harris Anderson, be imputed to appellant, thereby making appellant guilty of gross negligence and liable in exemplary damages to appellee?

"Question Two: Can the gross negligence of Harris Anderson be imputed to appellee's manager, S. W. Littlejohn, whom he represented and whose authority Anderson exercised in Littlejohn's absence, and, through Littlejohn, to appellant, making it guilty of gross negligence, and thereby liable to appellee in exemplary damages?

"Question Three: Did Littlejohn occupy such a relation to appellant as to make it liable in exemplary damages for his gross negligence, and, through him liable for the gross negligence of the· foreman, Harris Anderson, who exercised his authority in his absence, in the particular field of his employment—that is, as woods foreman?

"Question Four: In Houston & T. C. Railway Co. v. Cowser, 57 Tex. 306, you said:

" 'Exemplary damages are allowed only for the willful act, omission or gross negligence of the "defendant" to the suit, if a corporation, for the willful act, omission or gross negligence of one representing it in its corporate capacity,· as a corporate officer, but not 'of a mere ordinary servant or agent.'

"Under the proposition of law thus announced, did Harris Anderson represent appellant in its 'corporate capacity,' so that his gross negligence would be imputed to appellant, a corporation, thereby making it liable in exemplary damages for his gross negligence? Did Littlejohn represent appellant in its 'corporate capacity' in the sense in which that expression is used in the foregoing legal proposition?

"Question Five: On the issue of gross negligence and exemplary damages, what must be the official relation of the guilty servant to his master, a corporation, to make it liable in exemplary damages for his gross negligence?"

As shown by the opinion of the Commission of Appeals, Chronister Lumber Co. v. Mrs. Bob Williams, 116 Tex. 207, 288 S. W. 402, 404, the answers to the questions certified are as follows:

"The Honorable Court of Civil Appeals states that 'the evidence is sufficient to raise the issue and support a jury finding that Harris Anderson was guilty of gross negligence in the manner in which he made up and operated the log train, and that his negligence was the proximate cause of Bob Williams' death.' We believe, therefore, that question No. 1, as certified, should be answered 'Yes.'

"We do not perceive the materiality of questions No. 2 or No. 3, except as their subject-matter may be included in question No. 1, and to that extent they should receive the same answer. As to the remainder of the scope of questions Nos. 2 and 3 we are without sufficient data upon which to formulate answers.

"The excerpt from Cowser v. H. & T. C. Ry. Co. quoted in question No. 4, has been discussed above, and the answer to be made should be considered in the light of that discussion. The question should be answered 'Yes.'

"The answer to question No. 5, should be: An 'official relation,' as commonly understood, is not requisite; the essential 'relation' is that the act and the manner of its doing must have been previously authorized or subsequently ratified."

■ On the opinion of the Supreme Court, it follows that appellant was liable in gross negligence for the acts of its agents, servants, and employees that resulted in the death of Bob Williams.

The other issues arising on this appeal are as follows:

■ (1) The trial court did not err in refusing to strike out appellee's amended petition filed just before announcing ready for trial. While appellant's proposition complaining of such ruling assumes that it was "surprised" by the new allegations made by appellee, it does not show, either by its motion to strike or motion for new trial, that it was deprived of any evidence material to its defense.

■ (2) Appellant says it is "a settled principle of law many times reaffirmed by our Supreme Court, that an action for exemplary damages will not lie, unless the party suing for same shall also recover in his suit a sum in actual damages. The weekly payments to plaintiff which are being made in response to the award of the Industrial Accident Board are not, as plaintiff alleges, paid as 'actual damages.'" This proposition is not sound as applied to the facts in this case. The compensation allowed by the Workmen's Compensation Act is in the nature of and in lieu of damages as at common law. This action for exemplary damages was expressly authorized by article 5246—7, Complete Texas Statutes 1920, which is as follows:

"Nothing in this Act shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employee whose death is occasioned by homicide from the willful act or omission or gross negligence of any person, firm or corporation from the employer of such employee at the time of the injury causing the death of the latter. Provided, that in any suit so brought for exemplary damages the trial shall be de novo, and no presumption shall exist that any award, ruling or finding of the Industrial Accident Board was correct; and in such suit brought by the employee or his legal heirs or representatives against such association or employer, such award, ruling or finding shall neither be pleaded nor introduced in evidence."

■ Appellee's petition was not subject to general demurrer in that it failed to allege facts constituting gross negligence. . The evidence fully sustained appellee's allegations of gross negligence. The facts were that the general manager, a qualified woods foreman, required and compelled those under his direction to operate the train upon which the deceased was a passenger at a reckless rate of speed over a road that he knew to be in bad repair, and at a time when it was partly submerged under overflow water. He required the train to be made up by putting the caboose in front of a long train of log cars, heavily loaded, which was against the advice of those in charge of the train, and refused to permit the engineer and fireman to examine the track and bridges before attempting to carry the train over the bridges, though they were submerged under water, and when such permission was asked, replied, "Hell, no, we haven't got time to stop, we are late now." These facts were pleaded by appellee, and we think raised the issue of gross negligence.

■ The court did not err in the manner of submitting the case. Special issue No. 1 was: "Was the defendant, Chronister Lumber Company, guilty of gross negligence in the manner in which the train was made up and operated at the time and under the circumstances?" The petition fully alleged the manner in which the train was made up and was operated, and the evidence introduced on these issues did not go beyond the allegations of the petition. Appellee charged that the manner in which the train was made up and operated constituted gross negligence. This issue submitted appellee's case as it was made by the pleadings and the evidence.

Issue No. 2 inquired of the jury as to the amount of damages suffered by appellee, and the remaining question submitted the issue of the deceased's contributory negligence.

■■ Appellant's tenth proposition is that the verdict of the jury was "manifestly against the weight and preponderance of the evidence." In our judgment, the evidence fully sustains the answers of the jury that appellant was guilty of gross negligence, as that term was defined by the Commission of Appeals in answer to our certificate. The jury awarded damages in the sum of $6,000. In no sense was this excessive.

■ Appellant complains of the admission of evidence by the appellee, Mrs. Bob Williams, to the effect that deceased was earning $2.75 at the time of his death, and to the effect that she was not prepared by education to earn a livelihood for herself and children, etc. This

evidence was withdrawn by a written charge, in which the jury were told that they would not consider the same for any purpose, and "this testimony is withdrawn from you for any and all purposes." If the reception of this evidence was error, the error was cured by this charge.

As we understand appellant's brief, what we have said disposes of all propositions not involved in our certificate to the Supreme Court, and the answers thereto, as given in the first part of this opinion. It follows that the judgment of the trial court must be, and the same is hereby, in all things affirmed.