## CITY OF AUSTIN v. SALAZAR et al.
### No. 9958.

Court of Civil Appeals of Texas. Austin.

May 23, 1951.

Rehearing Denied June 27, 1951.

Trueman E. O'Quinn, W. T. Williams, Jr., and Robert L. Burns, Austin, for appellant.

Carter & Lewis, San Antonio, Cofer & Cofer, John D. Cofer, Austin, for appellees.

ARCHER, Chief Justice.

Angela Salazar and her two minor daughters, the widow and only children of the deceased, Miguel Salazar, and Juanita Salazar, the only surviving parent of the deceased, sued under the death statute for damages resulting from the death of Miguel Salazar and for the benefit of their subrogee, Security Mutual Casualty Company, a corporation, for the Workmen Compensation Benefits paid by said insurance company. The plaintiffs were in agreement as to their respective rights, and they were represented by the same counsel and no controversy existed between them.

The plaintiffs contended the defendant the City of Austin was negligent in the manner of the construction and maintenance of a bridge, a part of the public streets of the City of Austin, and the approach to said bridge, and that the defendant Hervey L. Eversberg, negligently contributed to the death of deceased.

The cause of the death of the deceased is not in dispute; the pleadings of plaintiffs and the City of Austin, and the testimony of the defendant Eversberg conceded that the Swift & Company truck, driven by the deceased, collided with some part of the abutment to the city bridge and overturned, and the deceased was instantly killed,— the exact manner and cause is unknown.

The City of Austin did not plead that the death was the result of an unavoidable accident, but the defendant Eversberg did.

The jury absolved the defendant Eversberg from negligence, and no judgment was rendered against him, and there is no appeal from such portion of the judgment.

The jury on all the issues of contributory negligence found the deceased was not guilty of any negligence; and found that the view of the abutment on the east side of the culvert where the accident occurred was obstructed by vegetation and that the deceased failed to see the headwalls of the bridge, and that his failure to see the headwalls was not negligence.

The jury found the City of Austin negligent in five particulars, but as to each act of negligence the jury found that each respectively was not a proximate cause of the injuries.

The jury found that the death of the deceased was the result of an unavoidable accident.

The court on proper motion held there was no evidence to support the finding that Salazar's death was an unavoidable accident. The court further found that the negligent acts of the City of Austin, as found by the jury as a matter of law, were proximate causes of the death of the deceased. Disregarding the answers of the jury to the contrary, the trial court rendered judgment for plaintiffs on the balance of the verdict as returned by the jury.

The appeal is based on 32 points assigned as error.

The first is that it was error for the court to disregard the answer of the jury to the effect that the death of Salazar was the result of an unavoidable accident, and in refusing to render judgment for the City.

Points 2, 3, 4, 5 and 6 are directed to the error of the court in refusing to render judgment for the City on the verdict that the negligence of the City, in failing to cut the weeds, or to provide a warning sign, or to paint the concrete abutments in a conspicuous manner, or to maintain proper warning posts at the approach to the culvert, or to maintain a proper inspection of the street and culvert, was not a proximate cause of the death of Miguel Salazar.

Points Nos. 7, 8, 9, 10 and 11 are directed to the error of the court in submitting special issues Nos. 1 to 13 and 23, 24 and 25 to the jury.

Special issues 1, 2 and 3 inquired of the jury if the City had failed to cut the weeds, and, if so, was such failure negligence, and, if negligence, was it the proximate cause of the death of the deceased. The last issue was answered in the negative.

Issues 4, 5 and 6 inquired if the street was narrower as it crossed the culvert than it was approaching the culvert on the south, and if the City failed to provide a warning sign indicating such condition, if any; and if such failure, if any, was negligence.

Special issue No. 7 required the jury to find if the negligence, if any, was the prox-imate cause of the death of the deceased. The jury answered special issues Nos. 4, 5 and 6 in the affirmative, and answered issue No. 7 that such negligence was not the proximate cause of the death of Salazar.

Special issues Nos. 8, 9 and 10 inquired if the City had failed to paint the concrete abutments in a conspicuous manner, and, if so, was such failure negligence, and if such negligence was a proximate cause of the death of Salazar. Issues Nos. 8 and 9 were answered "Yes" and issue No. 10 was answered "No".

Special issues Nos. 11, 12 and 13 inquired of the jury if the City had failed to maintain proper warning posts, and, if so, was such failure negligence, and if any such negligence was a proximate cause of the death of the deceased. Issues Nos. 11 and 12 were answered by the jury in the affirmative and issue No. 3 was answered in the negative.

In answer to special issue No. 23 the jury found that the City had failed to maintain a proper inspection of the street and culvert involved in the controversy and that such failure was negligence, but that such negligence was not the proximate cause of the death of the deceased Salazar.

Plaintiffs alleged that on or about August 26, 1949, Miguel Salazar was employed by Swift & Co., of San Antonio, Texas, as a truck driver and that on that date, while engaged in driving a Swift & Co. refrigerator truck north on East Avenue in the City of Austin, he had been followed for several blocks south of the 5300 block by a 1948 DeSoto automobile, the driver of which desired to pass the Swift & Co. truck.

Plaintiffs alleged that in the vicinity of the 5300 block on East Avenue the DeSoto began to pass the truck, and the truck moved slightly to the right to allow the DeSoto to pass and then proceeded in a straight line with its right wheels partially on and partially off the east edge of the pavement until the right rear dual wheel of the truck, which was constructed to follow a path slightly to the right of the

front wheel, collided with a concrete abutment at the edge of the pavement; that as a result of this collision the truck was thrown completely out of control, overturned and killed Miguel Salazar.

Plaintiffs alleged that a heavy growth of weeds made both sides of the concrete culvert invisible to traffic approaching from the south, and that neither the deceased nor the driver of the DeSoto saw the concrete abutments prior to the accident; that this dangerous condition had existed for such a length of time that the City had notice of it.

It was alleged that the City of Austin, its servants, agents and employees were negligent in—

(1) failing to "cut or mow the heavy growth of weeds and brush surrounding and hiding the aforesaid culvert";

(2) failing "to provide any type of warning sign whatsoever indicating the narrowing of the street at the culvert";

(3) failing "to paint the concrete abutment aforesaid in order to make conspicuous the aforesaid hidden hazard";

(4) failing "to erect warning posts at the ends of the said culvert as is customary, reasonable and proper";

(5) failing "to maintain adequate and unobstructed shoulders adjacent to the pavement in the vicinity of the place of the accident"; and that each of such acts and omissions was a proximate cause of the death of Miguel Salazar.

By trial amendment plaintiffs alleged that the City of Austin—

(1) "was negligent in failing to inspect the street and bridge in question and in failing to discover its dangerous condition," and

(2) "was negligent in failing to inspect the street and bridge and in failing to discover the growth of weeds obstructing the view of said bridge," and that such omissions were a proximate cause of the death of Miguel Salazar.

Plaintiffs also alleged that the defendant Eversberg was driving a 1948 DeSoto and negligently drove the DeSoto into the truck; that Eversberg was negligent in—

(1) turning to the right in front of the truck before the DeSoto had cleared the truck;

(2) failing to give an audible signal before passing the truck;

(3) failing to give the deceased such assistance as was necessary in order to obtain clearance to avoid the collision; and

(4) passing too close to the front of the truck under the circumstances in order to prevent a collision; and each such act was a proximate cause of the collision.

The defendant City of Austin answered by numerous special exceptions and, without waiving the special exceptions, entered a general denial, special denials, several pleas of contributory negligence, an allegation that negligence of Swift & Co. was the sole proximate cause of the accident, and other affirmative pleas not material here.

Defendant Eversberg answered by general denial, a general allegation of contributory negligence, a plea of unavoidable accident, and by allegation that the abutment on East Avenue was hidden by vegetation and this condition was the sole proximate cause of the death of Miguel Salazar.

In response to special issue No. 27 the jury found that the death of Salazar was the result of an unavoidable accident.

The jury found that Miguel Salazar was not guilty of contributory negligence in any of the particulars inquired of in special issues Nos. 28, 31, 33, 36, 40, 43 and 47. The jury found that the abutment on the east side of the culvert was obstructed by vegetation, but that such obstruction was not the sole proximate cause of the death of deceased.

The verdict was received and the City filed its motion for judgment on the verdict on October 14, 1950.

On October 13, 1950, the plaintiffs filed a motion for the court to disregard the answers of the jury in their verdict to special issues Nos. 3, 7, 10, 13, 14, 17, 20, 22, 25 and 27, and any other such issues as may be unnecessary for judgment in plaintiffs' favor to support a judgment for the plaintiffs, and that the court render

judgment, after ignoring the answers of the jury to said issues aforesaid on the verdict of the jury, in favor of the plaintiffs for the sum of $47,500 against the City of Austin, on the grounds that there is no evidence to support the finding of the jury in its answers to special issues No. 3, or No. 7, or No. 10, or No. 13, because an affirmative answer is not essential to plaintiffs' right of recovery in this case; and that the answer to special issue No. 2 is not material to plaintiffs' right of recovery; and that the jury had found in answer to special issue No. 21 that the conditions existing had existed for such length of time to have charged the City with notice; and that such finding is contrary to the undisputed evidence in this case and does not affect plaintiffs' right to recover because the undisputed evidence shows that persons in charge of the care of the streets of the City had actual notice of the conditions, and that the finding is without support of evidence.

The motion further alleged that there is no evidence to support the finding of the jury in answer to special issue No. 25, that the negligence of the City in failing to maintain a proper inspection of the street and culvert involved in this controversy was not a proximate cause of the death of the deceased, and that under the facts and circumstances, proven or which might have been proven, proximate cause existed as a matter of law.

The points of error Nos. 1 to 12 urged by the appellants involve the question of whether there was any evidence to support the jury findings, and consequently, if there was such evidence that the judgment of the trial court must be reversed and judgment here rendered for the City.

In order that we may reach a correct decision in this case a review of the evidence is required. Since there was no question as to the time or place of death, or the size of the truck and the car, or the size and location of the street and culvert, we will begin with the evidence as given in the testimony of the defendant Eversberg by deposition, which was that he was driving about 25 miles per hour when he first saw the truck; that he followed the truck several blocks; that he started to pass the truck and sounded his horn about 1 or 2-car lengths behind the truck; that the truck turned a little to his right; that his car was struck from behind by a Swift & Co. truck; that in passing the truck he increased his speed to more than 30 miles per hour; that he was traveling on the left-hand westerly or passing side of the highway when struck; that as he passed the truck he heard a crashing noise and afterwards felt the impact of the truck against the right rear portion of his car; that at or near the place of the collision there was a concrete culvert, which was not visible until he saw the abutment on the left westerly side, about the time he was even with the truck and passing it; that he was 4 or 5-car lengths from the culvert when he started to pass the truck; that he had passed beyond the culvert and the rear of his car was north of the north end of the culvert when his automobile was hit by the truck; that he did not know where the truck was when his car was hit, but it must have been on the highway where the culvert was located; that after the collision he stopped his car and ran back and found the truck lying on its left side headed in an easterly or northeasterly direction; that the driver was under the truck and gave no signs of life; that the paved portion of the highway at the point he passed the truck is between 16 to 18 feet wide; that his automobile stayed completely on the pavement while passing the truck, and that no portion of the truck left the pavement, and its left rear wheel was about in the middle of the highway. Mr. Eversberg was the only witness to the accident that testified.

Plaintiffs' exhibits Nos. 5, 6 and 7 are pictures of the scene of the accident taken on September 20, 1949; No. 5 was taken from a point about 150 feet south of the culvert, No. 6 about 50 or 75 feet south of the culvert, and No. 7 was taken from a point 30 to 50 feet north of the culvert, and are included herein. These pictures

reflect the conditions at the scene of the accident. The west abutment of the culvert is visible in both pictures taken in the positions and distances as set out above. Copies of these exhibits we have inserted herein.

Plaintiff's Exhibit No. 5.

Plaintiff's Exhibit No. 6.

Plaintiff's Exhibit No. **7.**

In plaintiffs' exhibits Nos. 17 and 18, taken on August 31, 1949, by Felipe G. Salazar, a brother of the deceased, Exhibit No. 17 was taken from a position on top of the hood of his car in the street, about 30 feet from the culvert. In this picture the east or right abutment is visible.

Exhibit No. 18, taken from a point looking south 4 to 6 feet in the street, reflects the entire length of the same abutment as plainly visible.

Defendant City of Austin's Exhibit No. 2, admitted on the evidence of plaintiffs' witness Mogonye, reflected the scene of the bridge in August 1949, and in this picture the west abutment is visible for its entire length and a part of the top of the last abutment is to be seen. In the foreground is shown a truck and a car in process of passing.

Defendant Eversberg's Exhibit No. 3 was stipulated by all parties as having been taken on the afternoon of August 26, 1949, facing in a northerly direction from a point just about even with the south end of headwalls of the culvert.

phalt surface on the bridge is 15.6 feet wide; that the dump width just north of the bridge was 24.7 feet, and south about 20 feet it is 26.9 feet wide; that the bridge was of a grayish color; that at the time of his investigation, long after the acci-

Defendant Eversberg's Exhibit No. 3.

Doak Rainey, witness called by plaintiffs, testified that it is 19.7 feet between the two sides of the culvert; that the as-

dent, he found a post and that he believed he could see the post in plaintiffs' Exhibit No. 8, on the east side and about in line·

with the headwall and some 4 or 5 feet from the bridge; that the post is discernible in City of Austin's Exhibit No. 1, as is the headwall of the culvert on the east side.

As we have stated, the trial court disregarded the answers of the jury to the unavoidable accident issue and the proximate cause issues, and found that the negligence of the City in each particular was a proximate cause of the death of Miguel Salazar as a matter of law, and entered judgment for the plaintiffs.

The power of the trial judge to disregard jury finding is in Rule 301, Texas Rules Civil Procedure: "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

Rule 301 has as its source Article 2211, Vernon's Ann.Civ.St. Strict compliance with the provisions of Article 2211 has been required by the cases construing it. Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526.

■ The finding can be disregarded only if it has no support in the evidence, or that the evidence was insufficient to warrant the submission of an issue. In Myers v. Crenshaw, 134 Tex. 500, 137 S.W.2d 7, 13, the court held: "The two phrases have reference to the determination by the court after verdict of a question of law, that is, the absence of evidence to raise an issue or to support a finding. * * *"

In determining whether there is any evidence to support a jury finding that has been disregarded, several general principles are to be considered as governing, i. e.:

■ First, every intendment from the evidence must be indulged in favor of the jury finding; and, second, only testimony which tends to support the finding can be considered, and conflicts must be disregarded and the testimony be considered in the light most favorable to the findings, and that although the facts may be undisputed, if reasonable minds can draw different conclusions or inferences from such evidence, an issue of fact is present, and the credibility of a witness must be submitted to the jury, even if such testimony is uncontradicted and will not support the finding of fact as a matter of law.

■ We have set out in our summary of the testimony the evidence which we believe supports the jury finding that acts or omissions of the City were not proximate causes of the death of Mr. Salazar.

■ The trial judge can disregard a jury finding only if there is no evidence to support it. Rule 301, T.R.C.P. In determining whether a jury finding may be disregarded the trial court looks only to the evidence.

In the case of Jones v. Gibson, Tex.Civ. App., 18 S.W.2d 744, 746, the court held: "* * * In determining whether a certain negligent act was the proximate cause of an injury, only the facts are to be considered. The findings of the jury convicting the defendant of negligence and exonerating the plaintiff from contributory negligence are to be given no weight. To our minds, a holding that, since the jury found the defendants negligent and the plaintiff not negligent, and since there is absent from the record evidence that the injuries were inflicted by some other agency or cause, the question of proximate cause was thereby eliminated, is to practically do away with the well-established doctrine of proximate cause. In all negligence cases in which the plaintiff recovers there is a fact finding of negligence against the defendant and where contributory negligence is pleaded and in any degree supported by evidence, a fact finding exonerating the plaintiff therefrom."

It was held in Texas & N. O. R. R. Co. v. Owens, Tex.Civ.App., 54 S.W.2d 848, 853, Er. Ref.: "* * * In other words, we understand appellant says that the jury

having found appellant guilty of acts of negligence charged against it, and the jury having found plaintiff was not guilty of negligence or contributory negligence, therefore there is no issue of new and independent cause. We do not think the finding of the jury on the questions would dispense with the necessity of showing the proximate cause of the injury."

We recognize that there are cases in which a court is warranted in holding that a definite given act of negligence proximately caused an injury as a matter of law. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; International-Great Northern R. Co. v. Hawthorne, 131 Tex. 622, 116 S.W.2d 1056.

In order for an act of negligence to be a proximate cause of an event it must not only be the direct and immediate cause of the event, but the event or some similar event must be one which could have been reasonably foreseen as a consequence of the act; that both elements are necessary to constitute proximate cause.

In East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613, 616, our Supreme Court held: " * * * The rule that the defendant's act or omission must be shown to be a proximate cause of the plaintiff's injury is applicable to cases where the alleged breach of duty is the violation of a statute or an ordinance. * * * While it has been criticized as involving a confusion of the elements of negligence with those of proximate cause (see Green, 'Are Negligence and "Proximate" Cause Determinable by the Same Test?—Texas Decisions Analyzed,' 1 Tex.L.Rev. 243, 423, 'the doctrine that foreseeableness or anticipation of injury is a necessary element to proximate cause is now so well established in this State that it is hardly necessary to do more than state the rule.' See San Antonio & A. P. Ry. Co. v. Behne, supra, Tex.Com. App., 231 S.W. 354, at page 356. The more recent cases we have cited above have adhered to this rule. Following the consistent statements of this court on the subject, the petitioner was therefore entitled to rely on the issue of proximate cause in

raising the question whether anything done or omitted by its employee could reasonably be anticipated to have resulted in the collision in this case."

In Comet Motor Freight Lines, Inc., v. Holmes, Tex.Civ.App., 203 S.W.2d 233, 238, Er.Ref.N.R.E., the court held:

"Neither negligence nor proximate cause can be established by mere proof of the happening of the tragic accident under the circumstances here disclosed.

" 'A jury cannot find that a person failed to exercise ordinary care under the circumstances existing at a certain time when the evidence does not disclose what the circumstances were.' Turner v. Texas Co., 138 Tex. 380, 385, 159 S.W.2d 112, 116.

"In Texas & N. O. Ry. Co. v. Warden, 125 Tex. 193, 200, 78 S.W.2d 164, 168, the Supreme Court of Texas quoted from an opinion of the Supreme Court of the United States, as follows: 'Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed, it might have happened in one of several ways and without causal negligence by the petitioner.' "

In the recent case of Butler v. Spratling, Tex.Civ.App., 237 S.W.2d 793, 796, the Court of Civil Appeals of Fort Worth held: "Throughout the whole field of the law pertaining to liability based on negligence, we encounter the rule that proximate cause is an essential of actionable negligence. 30 Tex.Jur., 692–699. San Antonio & A. P. Ry. Co. v. Behne, Tex. Com.App., 231 S.W. 354, is sufficient authority for the proposition that liability for a wrongful act is limited to such injuries as are proximately caused by such wrongful act, whether the wrongful act be wrongful per se, as for the failure to comply with a statutory duty, or wrongful at common law, as being a failure to exercise ordinary care. The rules for determining proximate cause are the same in both cases. In either case foreseeability or anticipation is a necessary element of proximate cause."

As we have stated, we believe that there is in the record evidence, which we have tried to summarize and which, when

**458**

believed by the jury, reasonably supported its finding that the acts of negligence so found were not the proximate cause of the death of Mr. Salazar, and that the trial court was in error in holding that there was no evidence to support the findings of the jury to issues as to proximate cause, and further holding that the negligent acts as found by the jury were as a matter of law the proximate cause of the death of the deceased.

The judgment of the trial court is reversed and judgment here rendered for the appellant.

Reversed and rendered.