## GOFF et al.
### v.
## LUBBOCK BLDG. PRODUCTS.

### No. 6320.

Court of Civil Appeals of Texas.
Amarillo.

Sept. 21, 1953.

Rehearing Denied Oct. 26, 1953.

Bob Huff, Lubbock, for appellants.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

PITTS, Chief Justice.

Appellant, Johnnie Goff as next friend and natural uncle of Joyce Marie Goff, a minor six years of age, filed suit on behalf of said minor against appellee, Lubbock Building Products, a corporation, for both actual and exemplary damages by reason of a collision between an automobile and a truck at a road intersection in Lubbock County, which collision resulted in the death of R. L. Goff, the father of the said minor. The truck involved in the collision was owned by appellee and was then being operated by appellee's employee, Donald Burris, a minor, within the scope of his employment by appellee, when the collision occurred on October 26, 1951.

Appellants pleaded that the collision occurred as a result of various acts of negligence on the part of appellee's agent, Donald Burris, such as his failure to keep a proper lookout, his failure to yield the right of way, excessive speed and the operation of the truck with defective brakes. Appellants further alleged that appellee was guilty of gross negligence which was a proximate cause of the collision by reason of placing the truck under the control of the minor, Donald Burris, and directing him to operate it when the same had defective brakes which was known to appellee's agent and superintendent to be a dangerous instrumentality even if operated by an experienced driver. They likewise alleged that appellee was guilty of gross negligence in directing the said minor to drive the said truck with knowledge that he was a young inexperienced driver without a driver's license. For these reasons appellant also alleged that appellee showed a conscious indifference to the rights, welfare and safety of others such as to constitute gross negligence which was a proximate cause of the collision and the results thereof.

The case was tried before a jury, at which time appellee admitted liability for actual damages to appellants by a stipulation made in open court but appellee there denied the amount of actual damages demanded by appellants. It likewise denied liability for any gross negligence. At the close of the evidence only the issue of actual damages and the issues on gross negligence were submitted to the jury.

The jury found, in effect, that appellee was liable to the minor, Joyce Marie Goff, for the sum of $3250 as actual damages as a result of the death of her father, R. L. Goff, and judgment was accordingly rendered from which part of the judgment no appeal has been perfected.

The jury further found that appellee's truck had defective brakes, which fact had been reported to appellee's agent and work superintendent, Mr. Biggs, and that such acts and knowledge constituted gross negligence on the part of appellee, which gross negligence was a proximate cause of the collision and the death of R. L. Goff. The jury also found that appellee employed Donald Burris, an inexperienced driver without a Texas driver's license; that appellee knew, or by the exercise of ordinary care could have known, that Donald Burris was an inexperienced driver without a driver's license; that such act and knowledge constituted gross negligence on the part of appellee, which gross negligence was a proximate cause of the collision and the death of R. L. Goff. For these reasons the jury likewise found that the minor, Joyce Marie Goff, was entitled to exemplary or punitive damages and fixed such damages at the sum of $3250.

In connection with its charge on gross negligence the trial court gave the following definition:

"'Gross Negligence,' as used in this charge, is that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it."

Article 4673, Vernon's Annotated Civil Statutes, says that:

"When the death is caused by the wilful act or omission, or gross negligence of the defendant, exemplary as well as actual damages may be recovered. Const. Art. 16, sec. 26."

Upon a motion timely filed by appellee, notice given and a hearing had thereon, the trial court set aside and disregarded all of the findings of the jury on the issues of gross negligence and exemplary damages and rendered judgment for the minor, Joyce Marie Goff, only for the $3250 actual damages. From that part of the judgment setting aside the jury verdict on gross negligence and exemplary damages and denying any recovery therefor appellants have perfected an appeal. The primary question before us is whether or not the trial court was justified in setting aside the jury verdict in question and denying the minor, Joyce Marie Goff, any recovery on the charges of appellee's gross negligence.

In the case of Heath v. Elliston, Tex.Civ.App., 145 S.W.2d 243, this court held, and the rule still prevails, that there are only two instances which will justify the trial court in disregarding the verdict of a jury and rendering judgment contrary thereto notwithstanding such verdict, namely, (1) when a directed verdict would have been proper and (2) when the particular findings of the jury have no support in the evidence. Rule 301, Texas Rules of Civil Procedure; D-Bar Ranch v. Maxwell, Tex. Civ.App., 170 S.W.2d 303; Corona Petroleum Co. v. Jameson, Tex.Civ.App., 146 S.W. 2d 512; City of Austin v. Salazar, Tex.Civ. App., 241 S.W.2d 445; Burt v. Lochausen, Tex.Sup., 249 S.W.2d 194. It follows that if there was any competent evidence heard in the case at bar to support the jury findings on either charge or both charges of gross negligence and the results thereof, the trial court erred in setting aside such and rendering judgment contrary thereto.

In the case of City of Austin v. Salazar, supra, the court announced the general rules that must be observed in determining whether or not there is any evidence to support jury findings that have been set aside and disregarded, namely, (1) every intendment from the evidence must be indulged in favor of the jury findings; (2) only testimony which tends to support the findings can be considered; and (3) conflicts must be disregarded and the testimony must be considered in a light most favorable to the findings.

Liability for actual damages having been admitted by appellee, it must be presumed that ordinary negligence on the part of Donald Burris, the minor who was operating appellee's truck at the time of the collision, was also admitted, whether such negligence was the result of his failure to keep a proper lookout at the time and place of the collision, his failure to yield the right of way, his excessive speed or the defective brakes on his truck. By reason of the said admissions made by appellee, the material evidence heard was only that concerning the issues of actual damages and gross negligence with the result thereof.

The evidence concerning the issues presented here for consideration was not strongly controverted. During the month of October, 1951, appellee was furnishing concrete to a paving contractor who had contracted a job of building a ramp at the Reese Air Force Base some 10 or 12 miles west of Lubbock. A few days prior to the collision here in question some labor troubles arose among appellee's employees and appellee decided to employ other labor.

J. T. Clark, appellee's general manager, testified that on the occasion in question a Mr. Biggs was appellee's superintendent or foreman on the job in question; that Biggs had authority to hire and fire laborers and particularly truck drivers and he was also in charge of the trucks used and was charged with the duty of seeing that all trucks were properly maintained and kept in repair for safe use; that appellee was operating 21 ordinary dump trucks on the job in question hauling sand, gravel and concrete; that each driver was instructed to report to Biggs any defective mechanical parts about a truck he was operating and it was the duty of Biggs to see that such defects were corrected and the truck put in a safe condition for operation; that on the day and at the time in question appellee's employee, Donald Burris, was operating one of appellee's trucks hauling sand, gravel and cement at a wage rate of $1.04 per hour.

According to the testimony of Donald Burris himself, he was 16 years of age at the time of the collision in question and became 17 years old on March 17 following the date of the collision on October 26, 1951, while his father testified that he was 17 years of age at the time of the collision. But, be that as it may, Marvin Burris, Donald's father, further testified that he was also working on the job in question at Reese Air Force Base but he was working for another employer; that he was present, however, when Biggs employed his son, Donald, and two other young men, ages 19 and 21, about eight o'clock on the morning before the collision occurred; that he told Biggs at the time of employment that

he did not want his son Donald to drive a truck, since Donald did not have a driver's license and would therefore be violating the law every time he drove a truck. But, notwithstanding his protests, Biggs employed Donald on the day before the collision and put him to driving a truck. Marvin Burris further testified that he heard his son Donald tell Mr. Biggs on two different occasions that there were no brakes on the truck he was operating but Biggs continued thereafter to have Donald drive the truck over a road and highway where there was an enormous amount of traffic, without repairing the brakes thereon notwithstanding the fact that appellee had facilities available to repair the truck.

Donald Burris testified that he began working for appellee operating a 1946 model Ford dump truck on the day previous to the collision which occurred between 9:30 and 10:00 o'clock on the morning of October 26, 1951; that Bob Biggs, appellee's foreman, had employed him on the previous day to haul concrete mix from appellee's plant to Reese Air Force Base, a distance of about 12 miles; that Biggs did not inquire if he had ever had any experience in driving a truck, however, he had driven a truck for one day about a year previous thereto; that Biggs was advised he had no driver's license when he was employed but Biggs said that "wouldn't make any difference, to go ahead and drive it"; that Biggs further said if he got picked up for not having a driver's license to take his ticket or slip to appellee's office where it would be fixed up; that on the first day he drove he found the truck had defective brakes and was hard to stop; that he had to pump the brakes to get them to catch and stop the truck and he reported such condition of the brakes to Biggs on the first day of his employment; that on the morning of the second day he again called the matter of his bad brakes to the attention of Biggs who told him to have brake fluid added, but the cylinder was already three-fourths full of brake fluid when it was examined and more fluid was added by an employee, but adding the fluid did not

help any as the brakes continued thereafter to give the same trouble and the matter was again reported to Biggs, advising him that the brake fluid had been added but the brakes were still defective; that on the morning of the collision and prior thereto, as he backed his loaded truck up a slope to get on a ramp for dumping the first load of the day, the brakes would not hold and he could not stop the truck on the ramp; that the truck rolled over the ramp and had to be pushed back on the ramp by hand; that Mr. Biggs was present and saw what happened on that occasion and Donald told Biggs again that the truck brakes were still defective and would not hold, which prevented his being able to stop the truck on the ramp for unloading purposes. But Donald continued to operate the truck without the brakes being repaired

Donald testified further that while returning for his second load that day his truck collided with the car in question at a dirt road intersection and the damages resulted therefrom. Liability for actual damages having been admitted by appellee, the issues of ordinary negligence had therefore been eliminated. Donald testified that as he approached the road intersection while going east at a speed rate of 30 or 35 miles per hour he saw the automobile approaching the intersection travelling south; that he tried five or six times to pump the brakes on the truck but the brakes would not hold and he could not therefore stop the truck, so he then "swerved to the left" and tried to go behind the approaching automobile but the collision occurred in the intersection notwithstanding his efforts to avoid it. Donald testified that if his brakes had held, he could have avoided the collision. He further testified that after he saw the approaching car he made two different attempts to pump his brakes, trying without success to stop the truck but his brakes would not hold; but, if the brakes had held, he could have either stopped or slowed down enough to have prevented the collision.

Appellee's general manager, J. T. Clark, testified that for many years he had been in charge of the use of trucks and he knew more than an average person about the mechanism and use of trucks, and that he was sure it was dangerous to operate a truck over public highways in the condition appellee's truck in question was in at the time of the collision.

T. E. Popplewell testified that he was president of Lubbock Building Products, appellee, and that J. T. Clark was general manager at Lubbock but it was the duty of their superintendent Biggs to hire competent drivers and to see that the equipment was kept in safe condition. Mr. Biggs, appellee's superintendent and foreman, did not testify at the trial.

There was other testimony heard given by appellee's other employees corroborating that given by Marvin Burris and his son, Donald Burris, concerning the employment of Donald and what was said at the time as well as concerning the defective brakes on the truck in question and reports of such having been made to Mr. Biggs by Donald Burris.

The witness Ernest Allen testified that he was the driver of the automobile involved in the collision in which R. L. Goff was riding when he was killed; that Goff was riding in the back seat and the truck hit the automobile on the right side near the back window killing Mr. Goff and another person riding in the automobile.

■ Much has been written on the law of gross negligence and exemplary damages, but it appears from what has been written that each particular case must be examined to determine whether or not gross negligence has been established. The term "gross negligence" was long ago defined by our Supreme Court in the case of International & G. N. R. Co. v. Cocke, 64 Tex. 151, as being "an entire failure to exercise care, or by the exercise of so slight a degree of care as to justify the belief that the person on whom care was imcumbent was indifferent to the interest and welfare of others". This definition has not been overturned although the term has since been defined by the use of other language meaning practically the same thing. "The term 'gross negligence' has been defined by the courts of this state in many decisions and has uniformly been held to be an entire want of care which would raise a presumption of a conscious indifference to consequences." Mayer v. Johnson, Tex.Civ.App., 148 S.W.2d 454, 457. "The authorities unanimously hold that heedless and reckless disregard of the rights of others means gross negligence." Wood v. Orts, Tex.Civ.App., 182 S.W.2d 139, 140. See also, Rogers v. Blake, Tex.Sup., 240 S.W.2d 1001. In Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709, 712, the court said: " 'Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it' ". In discussing the matter further the court there further said: " 'The rule is that recovery is permitted, in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice'." If the negligence indicates either "wantonness" or "malice", recovery is permitted. " 'Wantonness' is action without regard to the rights of others". 44 Words and Phrases, Wantonness, p. 613.

■ In its definition of "gross negligence" the trial court in this case properly stated, in effect, that it is an act of negligence which would raise a "belief" that such act was the result of "a conscious indifference" to the rights or welfare of those affected by it. In the case of Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571, the Supreme Court has said, in effect, that "conscious indifference" included in the definition of gross negligence is indifference to the rights or welfare of others, whether they be occupants of the car driven by him who is charged with gross negligence or be pedestrians or occupants

of other vehicles travelling upon the streets or highways. The probability of danger to all such persons must be considered in determining whether or not there is sufficient evidence to raise a "belief" that there existed "a conscious indifference" of the rights or welfare of others who may be affected thereby.

In the case at bar the question of whether or not there was sufficient evidence to raise a "belief" that there existed "a conscious indifference" of the rights or welfare of others on the part of Biggs, appellee's superintendent and foreman, on the occasion in question was a matter to be determined by the jury, as was held by the Supreme Court under similar circumstances in the recent case of Burt v. Lochausen, 249 S.W.2d 194. In a case such as this the consequences likely to result is a fact to be taken into consideration by the jury in determining the kind and amount of caution to be used and in determining whether or not the evidence raised in the minds of the jury a belief of the existence of a conscious indifference.

Exemplary damages may be awarded against a corporation because of gross negligence of its agents. Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409; Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397; Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413; Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S.W. 402 and Id., Tex.Civ.App., 28 S.W.2d 844.

Viewing the evidence in this case in a light most favorable to the jury verdict on gross negligence and exemplary damages and applying all of the other rules of law herein cited, we believe there was sufficient evidence to support the jury verdict and to warrant exemplary damages as found by the jury. That part of the trial court's judgment setting aside and disregarding the jury verdict concerning gross negligence and exemplary damages is therefore reversed and judgment is here rendered sustaining the jury verdict and awarding exemplary damages to the minor, Joyce Marie Goff, through Johnnie Goff, as next friend, in the sum of $3250 as found by the jury, together with the costs of this appeal taxed against appellee.

Reversed and rendered.